IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BURLHOLME CONGREGATION OF JEHOVAH'S WITNESSES, et. al., <br><br> *Plaintiffs*, <br><br> v. <br><br> MARK O'DONNELL. <br><br> *Defendants*. | Case No: 2:24-cv-0304-MRP <br><br> JURY TRIAL DEMANDED <br><br> **FILED UNDER SEAL** |

**DEFENDANT O'DONNELL'S BRIEF IN SUPPORT OF HIS MOTION FOR UNSEALING OF THE DOCKET AND FOR ENTRY OF A LIMITED PROTECTIVE ORDER**

Defendant Mark O'Donnell respectfully moves the Court to lift the blanket seal erroneously placed on the docket by the Clerk and to replace its prior Order, granted *ex parte*, which fully sealed several filings, with a more limited protective order that complies with Third Circuit precedent. Plaintiffs' asserted privacy interests can be fully protected by a more limited protective order that directs the parties to redact three specific types of content from their public filings—including those already filed—and simultaneously file unredacted copies of those documents under seal. Defendant has sought Plaintiffs' concurrence in this motion and the proposed order. Counsel for Plaintiffs has stated that they will oppose all of the relief sought.

At the outset of this litigation, Plaintiffs moved *ex parte* for sealing of two filings: the Complaint and the motion to seal. ECF 2. This Court granted that motion with an Order that directed the filing under seal of "the motion to seal, memorandum of law, and complaint—along

- 1 -

with any responses from defendant Mark O'Donnell thereto" until further Order of the Court. ECF 7.[1] Unfortunately, the entire docket and every filing in this matter—including the Court's Order, entries of appearance and motions for extensions of time—have been sealed. This erroneous blanket seal violates both the common law and the First Amendment and must be corrected.

Moreover, the Court's order fully sealing several documents instead of requiring redacted public filings is overbroad. The discrete information that Plaintiffs allege is confidential— allegedly intercepted communications, allegedly privileged communications, and details about a widely publicized grand jury investigation—can all be easily redacted from publicly filed documents, as is done regularly in federal court proceedings. Instead of a blanket seal, this case should proceed under a protective order that strikes the appropriate and constitutional balance between confidentiality and public access to proceedings in the federal judiciary.

Mr. O'Donnell therefore respectfully requests that this Court: (1) direct the Clerk to lift the blanket seal on the docket while leaving the original versions of the Complaint, Motion to Seal, and Answer under seal; (2) order the parties to publicly refile the sealed documents on the public record with specific redactions; (3) order that the same redactions be made in any future filings, with unredacted copies filed under seal and served on the other parties; and (4) order the parties to meet and confer over a comprehensive protective order for the case.

---

[1] Plaintiffs expressly acknowledged that Mr. O'Donnell would have the opportunity to seek to unseal those documents after he was served. *See* ECF 2-1 at 3.

## I.   FACTUAL BACKGROUND

Defendant Mark O'Donnell is an independent journalist who was raised and baptized in the Jehovah's Witness church. Answer with Affirmative Defenses at ¶ 4.[2] Since 2017, Mr. O'Donnell has reported widely on the systematic cover-up of child sexual abuse within Jehovah's Witness congregations and their associated corporations, including but not limited to the Watchtower Bible and Tract Society of New York, Watch Tower Bible and Tract Society of Pennsylvania, and the Christian Congregation of Jehovah's Witnesses. Ans. ¶ 31. Since 2019, Mr. O'Donnell has consulted with the Pennsylvania Attorney General's office with respect to a Statewide Investigative Grand Jury, which is investigating allegations of sexual abuse in Jehovah's Witness congregations throughout Pennsylvania. Ans. ¶ 31. Mr. O'Donnell has testified before that Grand Jury twice. *Id.*

Plaintiffs' Complaint alleges that in February 2023 Mr. O'Donnell attended an online Microsoft Teams meeting between attorneys and congregation leaders from the Plaintiff Jehovah's Witness congregations. Compl. ¶¶ 34-43. (ECF 1). As Mr. O'Donnell more fully explains in his Answer, he attended the meeting by invitation from one of the attendees. Ans. ¶ 3. Plaintiffs allege that the attorneys provided legal advice to the congregation leaders. Compl. ¶ 48. Plaintiffs allege that Mr. O'Donnell then disclosed some of this information during an interview on YouTube. Compl. ¶¶ 44-52.

---

[2] Mr. O'Donnell cannot identify the docket number of his Answer because he submitted it through the Clerk's designated email channel, and he does not have access to the docket.

The existence of the grand jury at issue in this case has been publicly and prominently reported on for at least four years.[3] Over the past year and a half, the Pennsylvania Attorney General has arrested at least sixteen current or former members of Pennsylvania Jehovah's Witness congregations for the sexual abuse of minors. Ans. ¶ 1. On October 7, 2023, the Philadelphia Inquirer reported charges brought by the Attorney General against four Jehovah's Witnesses for the sexual abuse of nineteen children, noting that the "[c]harges stem from a grand jury investigation that started after a 2018 Inquirer investigation examined how Witness leaders punished survivors after they reported abuse or sought help from police."[4] In February 2023, the Attorney General brought charges against five additional Jehovah's Witnesses accused of sexual abuse of children, "as part of an ongoing grand jury investigation of child sex abuse within the Witnesses' organization."[5] Again in July 2023, the Attorney General announced charges against five more Jehovah's Witnesses for "raping and exploiting children as part of a Pennsylvania grand jury investigation into the organization's handling of sexual abuse cases."[6] Plaintiffs

---

[3] David Gambacorta, *Grand jury investigators are 'dead serious' about revealing sexual-abuse cover-ups among Jehovah's Witnesses*, The Philadelphia Inquirer (Feb. 14, 2020), https://www.inquirer.com/news/jehovahs-witnesses-sex-abuse-cover-up-pennsylvania-grand-jury-investigation-20200214.html.

[4] David Gambacorta and Barbara Laker, *Pa. attorney general charges four Jehovah's Witnesses with sexual abuse of 19 children*, The Philadelphia Inquirer (Oct. 27, 2022), https://www.inquirer.com/news/pa-jehovahs-witnesses-sex-assault-attorney-general-shapiro-20221027.html.

[5] David Gambacorta, *Pa. attorney general charges five more Jehovah's Witnesses with sexual abuse*, The Philadelphia Inquirer (Feb. 8, 2023), https://www.inquirer.com/news/jehovahs-witnesses-arrested-pa-sex-abuse-grand-jury-investigation-20230208.html.

[6] Rodrigo Torrejon and David Gambacorta, *Pa. attorney general charges five Jehovah's Witnesses with rape, sexual abuse of children*, The Philadelphia Inquirer (July 7, 2023), https://www.inquirer.com/news/pennsylvania-attorney-general-jehovah-witness-child-sexual-abuse-20230707.html.

acknowledge the publicity of these proceedings in their Complaint. Compl. ¶ 1 ("This investigation has attracted some notoriety….").

## II.     ARGUMENT

### A.     The Record and Documents in This Proceeding are Presumptively Public.

Under both the First Amendment and the common law, there is a strong presumption that the public and the press have a right of access to court proceedings. Under Third Circuit law:

> A presumption of openness inheres in civil trials as in criminal trials. We also conclude that the civil trial, like the criminal trial, "plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 606, 102 S.Ct. at 2620. From these authorities we conclude that public access to civil trials "enhances the quality and safeguards the integrity of the factfinding process." *Id*. It "fosters an appearance of fairness," *id*., and heightens "public respect for the judicial process." *Id*. It "permits the public to participate in and serve as a check upon the judicial process-an essential component in our structure of self-government." *Id*. Public access to civil trials, no less than criminal trials, plays an important role in the participation and the free discussion of governmental affairs. Therefore, we hold that the "First Amendment embraces a right of access to [civil] trials ... to ensure that this constitutionally protected 'discussion of governmental affairs' is an informed one." *Id*. at 604-05, 102 S.Ct. at 2619-20.

*Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984). "The explanation for and the importance of this public right of access to civil trials is that it is inherent in the nature of our democratic form of government." *Id.* at 1069. Quoting Justice Oliver Wendell Holmes, the Third Circuit explained,

> It is desirable that the trial of [civil] causes should take place under the public eye … not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.

*Id.* at 1069 (cleaned up).

The Third Circuit has also made clear that the right of access to judicial proceedings extends to all judicial records and documents filed with the court. "The public's right of access

extends beyond simply the ability to attend open court proceedings. Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." *In re Cendant Corp.,* 260 F.3d 183, 192 (3d Cir. 2001) (internal quotations and citations omitted). The Third Circuit has affirmed this holding in numerous contexts:

> [W]e have applied the presumption of public access to a wide variety of civil records and documents, including papers filed in connection with a motion for summary judgment, *Westinghouse,* 949 F.2d at 660-62; the transcript of a civil trial and exhibits admitted at trial, *Littlejohn,* 851 F.2d at 678-80; settlement documents and post-settlement motions seeking to interpret and enforce the agreement filed with the district court, *Bank of America,* 800 F.2d at 343-46; and transcripts of a hearing for a preliminary injunction, *Publicker,* 733 F.2d at 1066-67.

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 161 (3d Cir. 1993).

A document is a "judicial record" presumed to be public if it "has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Pansy,* 23 F.3d at 780-83. Numerous other courts have also recognized the principle that the filing of a document gives rise to a presumptive right of public access. *Leucadia,* 998 F.2d at 161-62 and n.8 (collecting cases).

The Third Circuit has held that both the First Amendment and the common law require a very strong showing to overcome this presumption of public access to judicial records. Under the common law, "the party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). "The movant must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Id.* (quoting *Miller v.*

*Ind. Hosp*., 16 F.3d 549, 551 (3d Cir. 1994)). The "strong presumption of openness does not permit the routine closing of judicial records to the public." *Id.* Under the First Amendment, "to limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Publicker Indus.*, 733 F.3d at 1070. "Any restriction on the right of public access is evaluated under strict scrutiny." *In re Avandi*., 924 F.3d at 673 (quoting *PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013)).

A court order sealing all or part of a judicial record must meet requirements of both procedure and substance. *Publicker Indus.*, 733 F.3d at 1071. To satisfy the procedural requirements, the trial court must state the "countervailing interest it seeks to protect" and support that articulation with findings on the record that are specific enough for effective review. *Id.* To satisfy the substantive requirements, the record must show an "overriding interest that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* The court's evaluation of the need for secrecy must be made "on the record." *See, e.g., Press-Enterprise Co. v. Superior Ct. of California for Riverside Cnty*. (*Press-Enterprise II)*, 478 U.S. 1, 13-14 (1986); *Press-Enterprise Co. v. Superior Ct. of California for Riverside Cnty*., 464 U.S. 501, 510 (1984).

Whether it is the First Amendment or common law right of access being analyzed, each document or proceeding sealed must be considered separately. *See, e.g., Publicker Indus.*, 733 F.2d at 1071-72 (finding court abused discretion by closing entire hearing to public where only one of two motions argued were entitled to sealing).

The mandated "narrow tailoring" under the First Amendment requires that the court leave as much of the record available to public inspection as possible and consider—and document its

consideration of—less restrictive alternatives to protect the interests at stake. *Id.* at 1074 (court erred in closing entire hearing because "there is no indication why a less restrictive alternative such as a bifurcated hearing was not considered"); *see also Press-Enterprise II*, 478 U.S. at 14. As an illustration, in one recent case Judge Beetlestone of this Court approved redactions of specified financial information that was presented in connection with *Daubert* motions but refused a request to file an entire expert report under seal. *Brand Design Co., Inc. v. Rite Aid Corp.,* No. CV 22-1174, 2024 WL 643141, *6 (E.D. Pa. Feb. 14, 2024) (Beetlestone, J.) ("But when seeking to overcome the public right of access, 'specificity is essential,' *Cendent*, 260 F.3d at 194, and PureRED offers no explanation for why sealing Rogers' report in toto (as opposed to redacting portions of it) is necessary to prevent a clearly defined and serious injury."). In another recent case, Judge Pappert provided the parties a brief period on which to seek redactions of a memorandum opinion but cautioned that, consistent with Third Circuit precedent, "[t]he parties should propose the most limited redactions consistent with preventing the injuries they identify." *In re Lincoln Nat'l COI Litig.*, 620 F. Supp. 3d 230, 268 n.1 (E.D. Pa. 2022) (Pappert, J.).

Naturally, the decision to seal an entire record is especially difficult to justify. *Miller*, 16 F.3d at 551. The Third Circuit has in fact established a policy that prohibits the blanket sealing of its docket. *See* Notice to the Bar (Nov. 4, 2008) (attached hereto as Exhibit A). Plaintiffs did not request and have not offered any justification for that extreme remedy.

> **B.  The Court Can Protect the Parties' Privacy Interests in this Case by Requiring Redactions of Confidential Information from Publicly Filed Documents**

The information that Plaintiffs seek to protect can be discretely identified in the parties' filings and easily redacted for public filing, thereby both protecting Plaintiffs' asserted privacy interests and enabling the Court to comply with its obligations to provide public access to judicial proceedings under the common law and the First Amendment.

> 1. *The Clerk's Blanket Sealing of the Entire Docket Was Not Authorized by the Court and Must Be Lifted*

The Court's Order of February 2, 2024 directed that "The motion to seal, memorandum of law, and complaint – along with any responses from defendant Mark O'Donnell thereto – shall be filed under seal until further Order of this Court." ECF 7. Defendant presumes the Court issued this order pursuant to Local Rule 5.1.5(a), which provides that "a **document** in a civil action may be filed under seal only if … the Court orders the document sealed." However, the Clerk's Office has sealed the entire case, including the docket and any and all documents filed. If a member of the public attempts to search PACER, even knowing the case number, they will be unable to access the docket and the only information about the case shown will be "Sealed v. Sealed. This Case is under SEAL." The Clerk's sealing of the entire case was apparently made in error. The Court should correct this error by ordering the Clerk to make the docket public.

> 2. *The Common Law and First Amendment Rights of Public Access to Judicial Proceedings Do Not Permit the Court to Completely Seal the Complaint and Answer Where Confidentiality Interests Can Be Protected with More Tailored Means.*

As more fully set forth above, under both the First Amendment and the common law, any sealing of judicial proceedings must be tailored to protect against the particular injuries identified. *Publicker Indus.*, 733 F.2d at 1071-72 ("… the district court failed to consider less restrictive means to keep this information from the public …"); *Brand Design Co., Inc,*, 2024 WL 643141 at *6 ("PureRED offers no explanation for why sealing Rogers' report in toto (as opposed to redacting portions of it) is necessary to prevent a clearly defined and serious

injury."). Plaintiffs have offered no reason why redaction cannot protect their asserted privacy interests.[7]

Plaintiffs identified three types of allegedly confidential information that they felt justified filing documents under seal: (a) non-public information concerning a Pennsylvania grand jury investigation where the investigation itself has been publicized; (b) the content of allegedly privileged attorney-client communications; and (3) the content of a meeting that Plaintiffs alleged was illegally intercepted. All in all, the Complaint only includes ten paragraphs (out of 101), plus one Exhibit, that arguably contain information that Plaintiffs claim is protected. *See* Compl. ¶¶ 2, 3, 48, 49, 51, 60, 61, 72, 98, 101 and Compl. Exh. A. Mr. O'Donnell's Answer includes two paragraphs that contain information that Plaintiffs claim is protected. *See* Ans. ¶ 40, 47.

In seeking complete sealing of these documents, Plaintiffs have failed to consider the use of tailored redactions and, instead, have argued that the presence of assertedly privileged and/or intercepted communications, or information about grand jury proceedings, anywhere in a document justifies a complete seal. *See, e.g.,* Pltfs. Br. at 8 ("The complaint is in this case is based upon the 'contents' of O'Donnell's illegal wiretap … . Therefore this matter should proceed under seal … ."). But there's simply no statutory or legal basis for treating the mention of a protected category of information as itself protected information. For example, the

---

[7] Mr. O'Donnell contests Plaintiffs' claims of confidentiality but agrees that, at this point in the litigation, they are entitled to protection. Communications that Plaintiffs contend are protected by the attorney-client privilege can and should be kept confidential unless the Court rules at a later date that the asserted privilege does not apply or was lost. Likewise, Mr. O'Donnell denies that he violated any law, but agrees that until the Court rules on the legality of the alleged "interception," the *content* of the alleged interception should not be made public but should be redacted and filed under seal.

Pennsylvania and federal wiretap acts define the protected "contents" of a communication to be "information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8); 18 Pa. Cons. Stat. § 5702. Plaintiffs' legal claims about those communications aren't protected, nor is the fact that Plaintiffs are bringing such claims nor that they allege themselves to have suffered injuries related to the disclosure of those communications. The Court's order, at present, impermissibly seals all of these unprotected details in the Complaint and Answer from public access, when the assertedly confidential information is discrete and identifiable and can easily be redacted from public filings.

Similarly, In the context of attorney-client privilege, courts regularly tailor protective orders to permit discovery and filing of documents with privileged information redacted from otherwise discoverable information, recognizing that "the protection of the privilege extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The mere existence of the attorney-client relationship or fact of a consultation is not itself privileged information under the law. *See, e.g., McCrink v. Peoples Benefit Life Ins. Co.*, No. CIV. A. 04-CV-01068, 2004 WL 2743420, at *5 (E.D. Pa. Nov. 29, 2004) ("[T]hese interrogatories only seek the fact of legal consultation, which is not protected by the attorney-client privilege."). The use of redaction to protect the content of privileged communications is standard practice in the Eastern District of Pennsylvania. *See, e.g., Merck Sharp & Dohme Corp. v. Pfizer Inc.*, No. CV 19-2011, 2021 WL 2646943, at *4 (E.D. Pa. June 28, 2021) (Sánchez, C.J.) ("Merck is directed to furnish the requested material and, if there is truly privileged material contained therein, redact the documents and produce a privilege log."); *Utesch v. Lannett Co., Inc.*, No. CV 16-5932, 2020 WL 7260775 (E.D. Pa. Dec. 9, 2020) (Beetlestone, J.) ("[I]f Defendants' otherwise responsive, nonprivileged documents contain some privileged

information … Defendants may redact those portions of the documents prior to production."); *Sodexomagic, LLC v. Drexel Univ.*, 294 F. Supp. 3d 404, 405 (E.D. Pa. 2018) ("In such circumstances, the parties should redact the privileged portion of the email chain, rather than withholding production of non-privileged, "downstream" communications."). The same type of redactions—specific to the assertedly confidential communications themselves—can be applied to public filings.

While it is more rare for courts in civil actions to address protective orders around materials that might implicate grand jury proceedings, the fact that any nonpublic grand jury information in this case would overlap with Plaintiffs' other asserted confidentiality concerns saves the Court from needing to engage in any detailed analysis of grand jury privilege law here.[8] Even so, it is not clear that any grand jury privilege actually applies at all. First, as noted above and conceded by the Plaintiffs in the first paragraph of their Complaint, the grand jury investigation is public, has resulted in more than a dozen public prosecutions and "has attracted some notoriety." Compl. ¶ 1. The existence of the grand jury and the fact that it is investigating child sexual abuse in Jehovah's Witness congregations across the state is public information and disclosure of the existence of the grand jury itself is no basis to seal anything in this case. Second, Mr. O'Donnell, as a grand jury witness, is under no secrecy restrictions with respect to his own experience with and testimony before the grand jury. 2 Pa. Stat. and Cons. Stat. Ann. § 4549 ("No witness shall be prohibited from disclosing his testimony before the investigating

---

[8] In making an assertion of grand jury privilege, Plaintiffs cite a number of cases where courts ruled on discovery motions concerning whether transcripts and other materials created as part of grand jury proceedings were protected from discovery. Plaintiffs do not explain how those standards are applicable to any discussion of the existence of a grand jury proceeding that is public.

grand jury except for cause shown in a hearing before the supervising judge."); *United States v. White*, No. CRIM.A. 04-370, 2004 WL 2399731, at *4 (E.D. Pa. Sept. 22, 2004) ("It is, of course, well known that a witness called before the grand jury is not under any obligation of secrecy and may disclose his or her testimony to whomever wishes to listen.").

The nearest Plaintiffs come to identifying *nonpublic* "matters occurring before the grand jury" or that "relate to" grand jury proceedings are their allegations concerning certain subpoenas apparently issued by the grand jury. *See* Pltfs Memo at 10, ECF 2-1. The fact of subpoenas does not implicate any substantive proceedings of a grand jury or "the essence of what [is taking] place in the grand jury room," such that disclosure of the existence of subpoenas would provide more insight into the proceedings than sixteen criminal indictments already have. But, regardless, this information lines up precisely with the specific information putatively protected by the wiretap statutes and can be easily redacted. Moreover, Plaintiffs' generalized argument that "additional information about the investigation … is likely to be exposed to traditional media outlets if this litigation is conducted out in the open" is unable to withstand the detailed balancing required by the Court under the common law and First Amendment.[9] A protective order tailored to redact the specific contents of the allegedly intercepted communications will be more than sufficient to protect any ongoing privacy interests in the grand jury investigation that might be conceivably raised in this case.

---

[9] Notably, nothing that Mr. O'Donnell stated publicly refers to the Plaintiffs, individually or collectively, or ties them to the grand jury investigation. *See, e.g.,* Compl. Exhibit A at 1:04:26; 1:13:24-30.

**III.     CONCLUSION**

Wherefore, Mr. O'Donnell requests the Court correct the Clerk's error in sealing the entire case and provide for appropriately tailored protection of Plaintiffs' claimed confidential information by issuing an Order that: (1) directs the Clerk to lift the blanket seal on the docket while leaving the original versions of the Complaint, Motion to Seal, and Answer under seal; (2) orders the parties to publicly refile the sealed documents on the public record with specific redactions; (3) orders that the same redactions be made in any future filings, with unredacted copies filed under seal and served on the other parties; and (4) orders the parties to meet and confer over a comprehensive protective order for the case.

                                                  Respectfully submitted,

Dated: May 24, 2024                                /s/*Mary Catherine Roper*
                                                  Mary Catherine Roper
                                                  John Grogan
                                                  David Nagdeman
                                                  LANGER, GROGAN & DIVER P.C.
                                                  1717 Arch St., Ste 4020
                                                  Philadelphia, PA 19103
                                                  Tel: (215) 320-5660
                                                  Fax: (215) 320-5703
                                                  mroper@langergrogan.com,

                                                  *Counsel for Defendant*

# EXHIBIT A



# **NOTICE TO THE BAR**

Because the text of the docket contains procedural information only, Court of Appeals dockets will not be sealed. All documents, or individual documents within the case, may be sealed upon motion by a party pursuant to L.A.R. 106.

For the Court,

*Marcia M. Waldron*

MARCIA M. WALDRON
Clerk

November 4, 2008