*FILED UNDER SEAL*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BURHOLME CONGREGATION OF JEHOVAH'S WITNESSES,** *et al.*, | : <br> : <br> : Case No: 2:24-cv-0304-MRP <br> : |
| *Plaintiffs,* | : <br> : |
| v. | : <br> : |
| **MARK O'DONNELL** | : **FILED UNDER SEAL** <br> : |
| *Defendant.* | : |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT O'DONNELL'S
MOTION FOR UNSEALING OF THE DOCKET AND
FOR ENTRY OF A LIMITED PROTECTIVE ORDER**

Plaintiffs Burholme Congregation of Jehovah's Witnesses, *et al.* (hereinafter "congregations") respectfully request that this Court deny defendant Mark O'Donnell's motion to unseal the docket. The only thing more secret than a grand jury investigation is a wiretapped, privileged conversation about that investigation between subjects of the investigation and their attorneys. Since this entire lawsuit arises from an ongoing Pennsylvania grand jury investigation, and no part falls outside of that setting, this Court should treat this case like a grand jury case and continue to seal the entire docket/all documents – at least until the investigation is concluded.[1]

In the alternative, this Court should not attempt to decide contested issues about what parts of the docket/records are safe to unseal until the conclusion of discovery. As explained herein, the determination of what constitutes a "matter occurring before the grand jury" is notoriously difficult to pin down under both federal and Pennsylvania law.[2] Given the privacy interests at stake, and

---

[1] In the interests of brevity, the congregations incorporate by reference the arguments set forth in their memorandum of law in support of plaintiffs' *ex parte* motion to seal.

[2] *See infra U.S. v. Norian Corporation*, 709 Fed App'x 138, 141 (3d. Cir. 2017) (citing Fed. R. Crim. P. 6(e)) (holding grand jury secrecy extends beyond the proceeding itself to anything that

1

***FILED UNDER SEAL***

the permanent effect that the decision to unseal any information will have on the congregations and their elders, attempting to draw such lines at this early juncture in the litigation by way of redaction/protective order would be a risky endeavor. For example, Mr. O'Donnell disputes the origin of some of the information the congregations allege came from the intercepted conversation between the congregations and their attorneys, claiming it originated elsewhere. *See* Answer at ¶ 47. Without a complete record developed through discovery, it will be difficult for this Court to make an intelligent decision about what should be redacted because it may ultimately turn on the source of the information at issue.

Complicating matters further, to attempt redaction, this Court must consider not only the meaning of words (on the docket and in filings) on their face, but also how those words will be interpreted in the context of other publicly available information. For example, unsealing something as simple as the name of the parties may be enough to identify the congregations as subjects of the grand jury's investigation in light of Mr. O'Donnell's public campaign against the Jehovah's Witnesses for its handling of child sexual abuse, his statements about the investigation,[3] and his unlawful interception/disclosure of privileged communications between the congregations and their attorneys.[4] Without a full record of such statements, it will be difficult for the Court to predict how any information that is unsealed will be interpreted once it is in the public domain.

The congregations acknowledge that the public's right to open dockets is a fundamental one, and typical in the vast majority of civil cases. However, this right is not absolute, and must

---

"reveal[s] the essence of what takes place in the grand jury room."); *In re 2014 Allegheny County Investigating Grand Jury*, 223 A.3d 214, 231 (Pa. 2019) ("Plainly, grand jury secrecy reaches beyond what actually transpires in a grand jury room . . . .").

[3] www.jwchildabuse.org.

[4] *See* Complaint (Ex. A).

yield to the purposes behind grand jury secrecy, which include the protection of the identity of those under investigation.[5] The congregations should not have to choose between keeping their involvement in the grand jury's investigation secret and holding Mr. O'Donnell accountable for his acts of unlawful wiretapping of privileged communications. They should be able to do both. In this case, at this particular stage of the litigation, unsealing the docket would do nothing to advance the cause of open courts, and instead undermine the purposes of grand jury secrecy.

Therefore, the congregations respectfully request that this Court deny Mr. O'Donnell's motion to unseal the docket, without prejudice for him to renew his motion upon the conclusion of the grand jury's investigation or, in the alternative, the conclusion of discovery. However, should this Court decide to dissolve the seal on the entire docket now, a protective order should be issued and procedure established so that protected information[6] is not publicly disclosed.

## I.  FACTUAL BACKGROUND

The Pennsylvania Office of Attorney General is currently conducting a statewide grand jury investigation into how Jehovah's Witnesses handle allegations of child sexual abuse. Thus far, sixteen (16) alleged perpetrators have been charged in connection with this ongoing investigation. As part of this investigation, the congregations were served with a grand jury subpoena for records pertaining to child sexual abuse. On February 16, 2023, the congregations and their attorneys held a virtual meeting *via* Microsoft Teams ("Teams meeting"), in which the

---

[5] *See infra Trump v. Vance*, 140 S.Ct. 2412, 2427 (2020) (holding longstanding rules of grand jury secrecy aim to prevent the stigma of being subpoenaed and associated with persons or activities under investigation); *In re 2014 Allegheny County Investigating Grand Jury*, 223 A.3d at 234 (internal citation and quotation omitted) (holding the secrecy in which the grand jury operates "serves multiple critical purposes," which includes the "protect[ion] [of] the innocent accused who is exonerate from disclosure of the fact that he has been under investigation.").

[6] This includes not only grand jury information, but also information protected by Title III, the Pennsylvania and Maryland wiretap acts, and the Pennsylvania attorney-client privilege.

*FILED UNDER SEAL*

congregations sought and received legal advice relating exclusively to the investigation and the grand jury subpoenas issued to them. Mr. O'Donnell, who is disassociated from the religion, and is not recognized as a Jehovah's Witness, covertly tapped into the Teams meeting and later disclosed secret, privileged, and confidential parts of the meeting on YouTube and Reddit.com.

Having recognized the necessity of keeping this proceeding under seal, the congregations moved *ex parte* for the sealing of the complaint, motion to seal, supporting memorandum of law, and any responses from Mr. O'Donnell. *See* Plaintiffs' *Ex Parte* Motion to Seal. This Court agreed and granted the congregations' motion to seal "until further Order of this Court." *See* Order Granting Plaintiffs' *Ex Parte* Motion to Seal. To date, the grand jury's investigation has not concluded, and this Court has not ordered that the seal be removed. Mr. O'Donnell has not answered the amended complaint, and discovery has not yet begun. Thus, the circumstances giving rise to this Court's decision to seal the docket are unchanged.

## II. ARGUMENT

There is no common law or First Amendment right of public access to grand jury materials. Sealing is the rule, not the exception, in such cases. Thus, grand jury secrecy laws require that the docket remain sealed until the investigation into the Jehovah's Witnesses has concluded. Alternatively, because the Court has not yet examined the parameters of the congregations' privacy interests with the benefit of a full record developed during discovery, unsealing the docket is impracticable and premature under the common law and First Amendment right of public access.

### A. Sealing the Docket is Required under Grand Jury Secrecy Laws.

This docket must remain sealed because grand jury secrecy laws require it. "The policy of secrecy in connection with grand jury proceedings is well established[.]" *In re Grand Jury Investigation No. 76-398*, 424 F.Supp. 802, 803 (E.D. Pa. 1976). "Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept

from the public eye." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). There is no common law or First Amendment right of access to grand jury materials. *See Douglas Oil*, 441 U.S. at 218 ("Among the few limitations of the First Amendment right of access in criminal hearings, none is more important than protecting grand jury secrecy."); *U.S. v. Smith*, 123 F.3d 140, 151, 156 (3d. Cir. 1997). Grand jury secrecy extends beyond the proceeding itself to anything that "reveal[s] the essence of what takes place in the grand jury room." *U.S. v. Norian Corporation*, 709 Fed App'x 138, 141 (3d. Cir. 2017) (citing Fed. R. Crim. P. 6(e)). "[A] proceeding is related to or affects a grand jury investigation if it would reveal matters actually or potentially occurring before the grand jury." *Douglas Oil*, 441 U.S. at 238. "Among the interests protected by grand jury secrecy is the privacy interest of an investigation's subjects." *In re Impounded*, 277 F.3d 407, 411 (3d. Cir. 2022). "Records, orders, and subpoenas *relating* to grand jury proceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosure of matters occurring before a grand jury." *Smith*, 123 F.3d at 140 (citing Fed. R. Crim. P. 6(e)) (emphasis in original). Because unsealing the docket would make public the particular subjects of the grand jury's investigation, a subpoena issued in connection therewith, and other matters potentially occurring before the grand jury, the docket must be sealed pursuant to grand jury secrecy laws.

   1. <u>Unsealing the Docket Would Publicly Disclose Grand Jury Information.</u>

Given the overwhelming public interest in keeping grand jury proceedings and information related thereto secret, the docket must be sealed until the ongoing grand jury investigation into the Jehovah's Witnesses concludes. This entire litigation stems from Mr. O'Donnell's illegal interception of a Teams meeting, during which the congregations and their attorneys discussed (at length) the ongoing grand jury investigation into the Jehovah's Witnesses and several matters

related thereto. Specifically, by his own admission, the communications Mr. O'Donnell intercepted and subsequently disclosed pertained to: (1) the status of the ongoing investigation; (2) service of a grand jury subpoena on the congregations (including the specific years being investigated); (3) impending service of similar grand jury subpoenas on every Jehovah's Witness congregation in Pennsylvania; (4) the possibility that the congregations may be named in a criminal indictment as the investigation proceeds; and (5) the possibility that the congregations (through their elders) could be called to testify before the grand jury. *See* Answer at ¶ 47. This information necessarily involves matters "related to" the investigation, and most certainly reveals "the essence" of what is occurring before the grand jury.

Unsealing any part of the docket in this litigation would be in direct contravention of grand jury secrecy laws. This is especially so considering that the investigation into the Jehovah's Witnesses has attracted some notoriety – part of which is the result of Mr. O'Donnell's own social media posts about the investigation and his unlawful disclosures of wiretapped material. Even disclosing that this lawsuit was brought by the congregations against Mr. O'Donnell would enable the public to put two-and-two together and conclude that the congregations are implicated in the investigation. *See In re Newark Morning Ledger, Co.*, 260 F.3d 217, 225 (3d. Cir. 2001) (finding redaction of the names of the parties alleged to have leaked grand jury information would be insufficient to protect matters occurring before the grand jury). This alone would upend grand jury secrecy laws, which extend to the actual and potential subjects of a grand jury investigation. *See Douglas Oil*, 441 U.S. at 238; *Impounded*, 277 F.3d at 411. If publicly disclosing just the names of the parties would result in the disclosure of grand jury materials, it necessarily follows that publicly disclosing any other portions of the docket would result in the unlawful disclosure of materials subject to protection under grand jury secrecy laws.

*FILED UNDER SEAL*

    2.   O'Donnell Has Not Met His Burden In Establishing Disclosure Is Warranted.

Despite moving to unseal the docket, Mr. O'Donnell has offered no justification for doing so. Instead, he relies on the common law and First Amendment right of public access to justify unsealing the docket – a right that does not apply to grand jury materials. *See Douglas Oil*, 441 U.S. at 218; *Smith*, 123 F.3d at 151, 156. There is an overwhelming interest in preventing public disclosure of grand jury materials, to both ongoing grand jury proceedings as well as grand jury proceedings that have concluded. *See Smith*, 123 F.3d at 148. "Even after the grand jury has concluded its proceedings, a private party petitioning for access to grand jury materials must show that the need for [access] outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure." *Id.* (citing *Douglas Oil*, 441 U.S. at 223) (alterations in original). This burden is not satisfied by merely suggesting that redaction can adequately balance the public's right of access and the overwhelming interest in keeping grand jury materials secret. *See Newark Morning*, 260 F.3d at 224-25 (sealing, not redaction, was warranted where redaction would not strike the appropriate balance in protecting grand jury materials). Here, where the grand jury investigation at issue is still ongoing, and Mr. O'Donnell has not demonstrated any need for unsealing the docket, let alone a need that outweighs the public interest, his motion should be denied.

Absent any indication otherwise, the congregations can only assume that Mr. O'Donnell seeks to unseal the docket so that he may publicly comment on this litigation on his website, www.jwchildabuse.org, or other social media platforms, as he has done in the past. Even if sealing the docket is not required under grand jury secrecy laws, this Court could still seal the docket to prevent Mr. O'Donnell's use of these records to promote what he believes to be a public scandal. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (listing cases where the right of

*FILED UNDER SEAL*

public access has been denied to ensure records are "not 'used to gratify private spite or promote public scandal[,]'" "serve as reservoirs of libelous statements for press consumption," or "harm a litigant's competitive standing.") (internal citations omitted). Because the investigation is still ongoing and Mr. O'Donnell has not met his burden in demonstrating a need so overwhelming that it outweighs the interest in keeping grand jury materials nonpublic, the docket must remain sealed.

    3. <u>The Docket Must Remain Sealed Even Though This Investigation Has Attracted Some Notoriety.</u>

Contrary to Mr. O'Donnell's assertions, the necessity of sealing the docket is in no way lessened by the fact that the investigation into the Jehovah's Witnesses has attracted some notoriety. *See Smith*, 123 F.3d at 154-55 (sealing a document relating to a grand jury investigation even though it had already been publicly disclosed). Not only is this a disingenuous position that would reward Mr. O'Donnell for his unlawful public disclosure of intercepted communications, but also because it misconstrues the extent to which the investigation has been publicized. The Pennsylvania Office of Attorney General has only made the grand jury presentments against individual perpetrators of child sexual abuse public, and has actively refrained from publicly discussing the ongoing investigation into the handling of such allegations by elders in the faith.[7] Nevertheless, courts are "not powerless" in scenarios where some grand jury materials have been made public, nor are questions of sealing in such circumstances inherently "moot." *See Smith*, 123 F.3d at 154-55. Rather, case law suggests that in situations where grand jury materials have been publicized, sealing is inherently more necessary to prevent further injurious public disclosure. *See id.* (citing *U.S. v. Sells Eng'g, Inc.*, 463 U.S. 418, 422 (1983)). Indeed, it is only by sealing the

---

[7] *See* https://www.attorneygeneral.gov/?s=jehovah%27s+witnesses (last accessed June 14, 2024).

8

docket in such cases that "the veil of [grand jury] secrecy is lifted higher[.]" *Sells Eng'g*, 463 U.S. at 422. Therefore, sealing the docket is required under grand jury secrecy laws.

> **B. In the Alternative, Sealing the Docket is Necessary Until The Conclusion Of Discovery And Adjudication Of The Parameters of the Congregations' Privacy Interests.**

Sealing the docket is necessary to preserve higher values and to protect important countervailing interests, specifically grand jury secrecy, preventing disclosure of unlawfully intercepted communications, and the attorney-client privilege. Sealing the docket is narrowly tailored to serve these overriding privacy interests because redaction is not yet ripe or practicable. These higher values and countervailing interests overcome the presumptive public right of access.

Under both the First Amendment and common law, there is a presumption of openness in civil trials. *See In re Avandia Mktg., Sales Pracs. & Prods. Liability Litig.*, 924 F.3d 662, 672-73 (3d. Cir. 2019). Encompassed in the presumption of openness is the public's right of access to civil trials. *See Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1069 (3d Cir. 1984). However, the public's right of access to civil trials is not absolute under the common law or First Amendment. *See id.* at 1070-71. "[T]here are certain exceptions to the presumptive openness of judicial proceedings." *Id.* at 1070 (citing *Nixon*, 435 U.S. at 598). The presumption of public access has been consistently rebutted in cases involving overwhelming privacy interests. *See id.*; *see generally Nixon*, 435 U.S. at 598. A party seeking to restrict the public's right to access proceedings "bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue." *Zenith Radio Corp. v. Matsushita Elec. Indus., Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 891. "The injury must be shown with specificity." *Id.*

*FILED UNDER SEAL*

Courts may limit the right of public access "when an important countervailing interest is shown." *Publicker Indus.*, 733 F.2d at 1071. In doing so, courts "must satisfy certain procedural and substantive requirements." *Id.* Procedurally, a court must "articulate the countervailing interest it seeks to protect and make 'findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id.* (citing *Press-Enterprise Co. v. Superior Ct. of California, Riverside Cnty.*, 104 S. Ct. 819, 824 (1984)). If the question of whether a countervailing interest justifies closure has yet to be decided, courts should keep proceedings closed to the public until such a determination has been made. *Id.* at 1073 (holding closure and sealing were necessary "mechanisms with which to buttress the district court's attempt to preserve secrecy while it deliberated on the question of confidentiality."); *Smith*, 123 F.3d at 151 (holding closure was justified while the district court was deliberating whether the record implicated grand jury materials). Deciding these questions publicly inheres the risk that otherwise protected information is wrongfully made available to the public. Substantively, "the record before the trial court must demonstrate 'an overriding interest based on findings that closure is necessary to preserve higher values and is narrowly tailored to serve that interest.'" *Publicker Indus.*, 733 F.2d at 1071 (citing *Press-Enterprise*, 104 S. Ct. at 824). "The overriding interest can involve the content of the information at issue, the relationship of the parties, or the nature of the controversy." *Id.* at 1073 (an interest in safeguarding a trade secret involves the content of the information, while an interest in safeguarding attorney-client communications involves the relationship of the parties).

1. <u>Sealing the Entire Docket is Necessary to Preserve Higher Values and to Protect Important Countervailing Interests.</u>

   a. *Grand Jury Secrecy Laws Require the Docket Remain Sealed.*

As established above, grand jury secrecy laws require that the docket remain sealed. The congregations have made a "colorable showing" that grand jury materials are implicated in this

matter, thus the docket must be sealed – at least until this Court determines (based on an examination of the record developed during discovery) whether grand jury materials are truly implicated in this matter. *See Smith*, 123 F.3d at 151 ("The district court must ensure that any [grand jury] material remains secret, for, otherwise, potentially confidential material would be publicly disseminated before the court can decide whether those materials are actually secret. The risk that the [record] will disclose grand jury matters is significant enough that closure is warranted."); *Newark Morning*, 260 F.3d at 228 ("[T]he District Court properly sealed the initial filings and motions so that it could determine whether secret grand jury information was implicated. . . . We see no error.").

>   b. *The Presence Of Wiretapped Communications Also Weigh In Favor Of Keeping The Entire Docket Sealed.*

Title III, as well as the Pennsylvania and Maryland wiretap acts, contain provisions expressly prohibiting the disclosure of unlawfully intercepted communications, and any evidence derived therefrom, in court proceedings. *See* 18 U.S.C. § 2515; 18 Pa. Cons. Stat. § 5721.1(a); Md. Code, Cts. & Jud. Pro. § 10-405(a). Public disclosure of unlawfully acquired communications "thwart[s] the congressional objective of protecting individual privacy by excluding such evidence."[8] *See U.S. v. Cianfrani*, 573 F.2d 835, 857 (3d. Cir. 1978) (internal citations omitted). Specifically, these statutes provide that:

> Whenever any wire or oral communication has been intercepted, no part of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or ***before any court*** . . . if the disclosure of that information would be in violation of [Title III].

18 U.S.C. § 2515 (emphasis added).

---

[8] Both the Pennsylvania and Maryland wiretap acts are modeled after Title III, which permits state legislatures to pass comparable state wiretapping acts that provide equal, if not more stringent, privacy protections to those codified in Title III. *See Commonwealth v. Deck*, 954 A.2d 603, 607 (Pa. Super. 2008); *Davis v. State*, 43 A.3d 1044, 1045-46 (Md. 2012).

> [N]o person shall disclose the contents of any wire, electronic, or oral communication, or evidence derived therefrom, ***in any proceeding in any court***, board, or agency ***of this Commonwealth***.

18 Pa. C.S.A. § 5721.1(a) (emphasis added).

> [W]henever any wire, oral, or electronic communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding in or ***before any court*** . . . if the disclosure of that information would be in violation of [the Maryland Wiretap Act].

Md. Code, Cts. & Jud. Pro. § 10-405(a) (emphasis added).

Congress and the state legislatures have an overwhelming interest in protecting parties from public disclosure of unlawfully intercepted communications. This interest is so strong that Congress and the state legislatures have not only codified a blanket prohibition on the disclosure of the contents of the unlawfully intercepted communications, but also any evidence derived therefrom. This prohibition is a "sufficiently weighty" consideration that should not yield to the presumptive right of public access to proceedings.[9] *See Cianfrani*, 573 F.2d at 856-57.

Considering this litigation arises from Mr. O'Donnell's unlawful interception and/or disclosure of secret, confidential, and privileged information, the docket cannot be unsealed until this Court decides: (1) whether Mr. O'Donnell's interception violated Title III, the Pennsylvania Wiretap Act, and/or the Maryland Wiretap Act; (2) what the "contents" of the intercepted communication is; and (3) what evidence, if any, is derived from the intercepted communication. Until these determinations are made, unsealing the docket inheres the risk that unlawfully

---

[9] The Third Circuit has afforded district courts broad discretion to limit or deny public access to the records of proceedings where Congress' interest in protecting privacy is far murkier. *See U.S. v. A.D.*, 28 F.3d 1353, 1361-62 (3d Cir. 1994) (holding lower court had discretion to prevent public access to the records of a proceeding where Juvenile Delinquency Act contained confidentiality provisions tending to underscore Congress' overriding interest in privacy). Where Congress and the state legislatures have codified their overwhelming interest in preserving privacy and preventing unlawful public disclosure, courts must ensure these interests are protected.

*FILED UNDER SEAL*

intercepted communication is publicly disclosed in direct contravention of the wiretapping statutes and the objectives of Congress and the state legislatures.

        *c. The Presence Of Privileged Communications Also Weigh In Favor Of Sealing.*

"The attorney client privilege is one of the 'oldest of the privileges for confidential communication known to common law.'" *Owens v. QVC*, 221 F.R.D. 430, 432 (E.D. Pa. 2004) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)). "Private and public interests strongly support the preservation of confidential attorney-client communications," *Casey v. Unikek Glob. Servs., Inc.* 2015 WL 539623, at *7 (E.D. Pa. 2015), because the privilege "foster[s] the free and open exchange of relevant information between the lawyer and client." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 47 (Pa. 2011) (citing *Jaffee v. Redmond*, 116 S. Ct. 1923, 1933 (1996)). "Because of the sensitivity surrounding the attorney-client privilege, care must be taken that, following any determination that an exception applies, the matters covered by the exception be kept under seal or appropriate court-imposed privacy procedures until all avenues of appeal are exhausted." *Haines v. Ligget Grp. Inc.*, 975 F.2d 81, 97 (3d. Cir. 1992). "Failure to maintain such information under seal will cause a clearly defined and serious injury not only to the parties seeking closure but also to the public interest which the attorney-client privilege is designed to serve." *Dombrowski v. Bell Atl. Corp.*, 128 F. Supp. 2d 216, 219 (E.D. Pa. 2000). Thus, "[p]rotecting the attorney-client communications and attorney work product are frequently found to meet the standard to be sealed." *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, No. 3:18-cv-153, 2021 WL 11879651, at *5 (E.D. Pa. 2021).

Here, the communications that Mr. O'Donnell intercepted at the Teams meeting are protected by the attorney-client privilege and weigh in favor of a broad sealing order. The whole purpose of the intercepted Teams meeting was for the congregations to seek and receive legal

*FILED UNDER SEAL*

advice about the grand jury investigation and subpoena. Specifically, the congregations and their attorneys discussed: (1) that attorneys for the Jehovah's Witnesses were meeting with each Pennsylvania congregation, county by county, and had covered twenty (20) counties by that date; (2) the existence of a "litigation hold;" (3) instructions on how to comply with the litigation hold; (4) the details behind preparing a privilege log; (5) instructions on how to comply with the grand jury subpoena; (6) discussions related to the payment of legal fees; (7) the possibility of having to testify before the grand jury; and (8) the possibility of being named in a criminal indictment. *See* Answer at ¶ 47. This information is necessarily privileged, and public disclosure of this information will undoubtedly harm both the congregations' legal interests in connection with the investigation and the public's interest in protecting attorney-client communications.

The congregations have made a colorable claim that the communications at issue are protected by the attorney-client privilege. Until this Court decides whether the attorney-client privilege applies to these communications, this proceeding must be sealed to prevent potentially privileged information from being publicly disclosed. *See Publicker Indus.*, 733 F.2d at 1072 (holding the district court did not err in sealing the record from the public before it decided the question of confidentiality); *Haines*, 975 F.2d at 97 (following any determination that an exception applies, the matters covered by the exception to be kept under seal).

   2. <u>Sealing is Narrowly Tailored to Serve Overriding Privacy Interests Because Redaction Is Not Yet Ripe or Practicable.</u>

While redactions are usually the most narrowly tailored way to balance a party's privacy interests and the public's right of access, "there are circumstances where redactions are insufficient to protect [] privacy interests[.]" *Salcedo v. Milton S. Hershey Med. Ctr.*, 2024 WL 476888, *9 (M.D. Pa. 2024) (finding redactions insufficient where record contained detailed medical histories, illness reports, notes of conversations between physicians and patients, and medical

*FILED UNDER SEAL*

assessments/care plans because redaction would be tantamount to wholesale sealing of the exhibits); *see also Smith*, 123 F.3d at 153 (holding redaction was "highly impracticable" and "inefficient" where purported grand jury materials were implicated in a document); *U.S. v. Thomas*, 905 F.3d 276, 283 (3d Cir. 2018) (holding redaction would be insufficient to protect appellee's interests in confidentiality of sensitive information); *Newark Morning,* 260 F.3d at 225 (finding redaction of the names of the parties alleged to have leaked grand jury information would be insufficient to protect matters occurring before the grand jury).

Further, the question of redaction is not ripe for review until the conclusion of discovery, and the Court has allowed the parties to argue the merits of the asserted privacy interests and made a determination as to what information, if any, is subject to protection. *See Smith*, 123 F.3d at 153 ("It is not until the district court determines what constitutes grand jury material in the context of this case . . . that it will know what aspects of the [record] to make public, if any"); *Publicker Indus.*, 733 F.2d at 1072 ("Parties are thus afforded the opportunity to resolve their disputes without automatically destroying the confidentiality of certain information. If after the closed proceedings, the court deems the countervailing interests insufficient to overcome the presumption of openness, they may make a transcript of the proceedings available."); *Haines*, 975 F.2d at 97 ("We are concerned that the [attorney-client] privilege be given adequate protection, and this can be assured only when the district court undertakes a thorough consideration of the issue, with the assistance of counsel on both sides of the dispute."). Indeed, the Third Circuit has held that even if it were possible for courts to identify potentially protected material "in advance and to restrict only access to that particular material without the benefit of oral argument, [it] would not require the district court to do so." *See Smith*, 123 F.3d at 153.

*FILED UNDER SEAL*

Here, redaction would be insufficient to protect the congregations' and the public's overriding interests in preventing public disclosure of (1) grand jury materials; (2) unlawfully intercepted communications and evidence derived therefrom; and (3) privileged attorney-client communications. The docket in this litigation is inextricably intertwined with potentially secret, confidential, and privileged information. This litigation directly arises from Mr. O'Donnell's unlawful interception of grand jury materials and privileged information. It would be a difficult and risky endeavor to disentangle all of the protected information implicated herein (in essence, the entirety of this proceeding) *via* redaction prior to the completion of discovery.

Because this Court has not yet decided whether these privacy interests justify sealing some or all of the docket, and similarly has not decided what parts of the docket should be kept from the public, an order requiring redaction would be "cumbersome, impractical, and inefficient." *Id.* at 153. Of course, were any such order to be issued, it would have to extend broadly to cover: (1) any potential grand jury materials; (2) any and all contents of communications potentially intercepted in violation of the law; (3) any and all evidence potentially derived from unlawful interceptions of communications; and (4) any and all material potentially protected by the attorney-client privilege to ensure that no potentially protected information, that is later determined to be secret, confidential, or privileged, is inadvertently disclosed to the public. Such broad-stroke redactions would be tantamount to wholesale sealing of the docket and would obviate the purpose of ordering redactions (instead of sealing) in the first place. *See Salcedo*, 2024 WL 476888 at *9. Further, it is unlikely that the parties will agree on the scope of any such redaction order. Thus, the congregations' interests can only be protected by keeping this proceeding under seal, at least until this Court decides whether, and to what extent, their privacy interests are meritorious.

## III. CONCLUSION

Wherefore, the congregations respectfully request that this Court deny Mr. O'Donnell's motion to unseal the docket, without prejudice for him to renew his motion upon the conclusion of the grand jury's investigation or, in the alternative, the conclusion of discovery. However, should the Court decide to dissolve the seal on the entire docket now, a protective order should be issued and procedure established so that protected information is not publicly disclosed.

                Respectfully submitted,

                **COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC**

Date: June 21, 2024                _____
                EDWARD SEGLIAS, ESQUIRE
                PA Identification No. 55103
                STEVEN WILLIAMS, ESQUIRE
                PA Identification No. 62051
                ASHLING A. EHRHARDT, ESQUIRE
                PA Identification No. 93787
                1600 Market Street, 32nd Floor
                Philadelphia, Pennsylvania 19103
                Tel.: (215) 564-1700
                Email: eseglias@cohenseglias.com
                        swilliams@cohenseglias.com
                        aehrhardt@cohenseglias.com
                *Attorneys for Plaintiffs Burholme Congregation of Jehovah's Witnesses, et al.*