IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BURLHOLME CONGREGATION OF JEHOVAH'S WITNESSES, et. al., <br><br> *Plaintiffs*, <br><br> v. <br><br> MARK O'DONNELL. <br><br> *Defendants*. | Case No: 2:24-cv-0304-MRP <br><br> JURY TRIAL DEMANDED <br><br> **FILED UNDER SEAL** |

### DEFENDANT O'DONNELL'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR UNSEALING OF THE DOCKET AND FOR ENTRY OF A LIMITED PROTECTIVE ORDER

Federal Courts abhor secrecy. Nevertheless, Plaintiffs now seek, for the first time, an order sealing the *entire* docket in this case. For the reasons set forth in Mr. O'Donnell's original brief and those that follow, this Court should deny that relief and grant the relief requested by Mr. O'Donnell.

Plaintiffs advance two arguments to seal the docket in this matter: that this litigation should be treated exactly like a grand jury proceeding; and that nothing short of sealing the docket will protect Plaintiffs' interests. There is no legal or factual basis for either argument.

**A.    This Litigation Should Not Be Treated as a Grand Jury Proceeding.**

Plaintiffs' case does not arise from a grand jury proceeding nor are their claims "related to" a grand jury investigation. Plaintiffs assert statutory and common law claims for damages arising from Mr. O'Donnell's allegedly illegal participation in an online meeting. Some of the content of that meeting concerned subpoenas issued in a grand jury investigation. Mr. O'Donnell has already proposed a protective order that would keep the contents of that meeting confidential. The issue of grand jury secrecy is a "red herring." This civil proceeding is

- 1 -

presumptively open to the public.

Indeed, even proceedings that *do* arise entirely from grand jury proceedings—such as contempt proceedings brought against those alleged to have violated grand jury secrecy orders—are not entirely sealed. Instead, they are sealed only to the extent necessary to protect grand jury secrecy.[1] That is the key question—the degree of sealing needed—in each of the cases cited by Plaintiffs. None of those cases supports the sealing of the entire proceeding and the docket. *See, e.g., In re Newark Morning Ledger Co.*, 260 F.3d 217, 223 (3d Cir. 2001). The rule from those cases is that "'if the[court] can allow some public access without risking disclosure of grand jury matters—either because the subject of the proceeding removes the danger or because the proceedings may be structured to prevent the risk without disruption or delay, Rule 6(e)(5) contemplates that this shall be done.'" *In re Newark Morning Ledger*, 260 F.3d at 224–25 (quoting *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 502 (D.C. Cir. 1998)). The presence of some grand jury related information in this case does not justify sealing the entire case. It justifies the entry of a properly tailored protective order.

### B. Grand Jury Secrecy and Plaintiffs' Privacy Interests Can Be Protected Without Sealing the Entire Docket.

Despite the limited information contained on a docket, Plaintiffs contend that sealing is necessary because (1) their identities should not be revealed; (2) some "grand jury materials" could somehow be revealed by the docket; (3) the allegedly intercepted and/or attorney-client communications could somehow be revealed by the docket; and (4) Mr. O'Donnell might speak about the case. Alternatively, Plaintiffs suggest that the Court cannot determine what information

---

[1] "'[A] proceeding is related to or affects a grand jury investigation if it would reveal matters actually or potentially occurring before the grand jury.'" *United States v. Smith*, 123 F.3d 140, 150 (3d Cir. 1997) (quoting *In re Grand Jury Subpoena*, 103 F.3d 234, 238 (2d Cir. 1996)).

should be protected without discovery and that the docket should therefore remain sealed until that or the grand jury investigation is complete. None of these concerns justifies the extraordinary step of sealing the docket.

> 1. *Any interest that Plaintiffs have in concealing their identities can be protected through the use of pseudonyms.*

Plaintiffs argue that publicly revealing that Mr. O'Donnell has been sued by these specific Jehovah's Witness congregations will allow members of the public to identify these congregations as targets in the Attorney General's investigation. That exact inference has been rejected as a basis for sealing by the Supreme Court of Pennsylvania. *See Levy v. Senate of Pennsylvania*, 65 A.3d 361, 372 (2013) (rejecting request for redaction of the name of a state senator from an otherwise public document confirming retention of attorney with a subject line referencing a grand jury investigation: "Given the substantial redactions of confidential communications in the body of the document, we hold that the Commonwealth Court correctly concluded that there was no need to redact the client's name. Nothing was revealed other than the fact of counsel's engagement and that it related to a grand jury investigation.").

Regardless, the proper procedure to protect a litigant's identity is through a motion to proceed pseudonymously. The Third Circuit holds that such a motion may be granted where the movant shows "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable" were they to proceed under their actual names. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). *If* those prerequisites are met, the court should "balance a plaintiff's interest and fear against the public's strong interest in an open litigation process." *Id*.[2] Although Mr. O'Donnell

---

[2] The Third Circuit has instructed district courts to consider several factors when deciding a motion to proceed under pseudonym. *Id*. at 409 (listing factors). In addition, courts are required to consider all the relevant facts of a particular case. *Id*. at 410.

doubts that Plaintiffs can meet that burden, Mr. O'Donnell would not oppose a motion by the Plaintiff congregations to proceed by pseudonyms, such as "Congregation of Jehovah's Witnesses #1" and so forth. Mr. O'Donnell would of course abide by any court order that he not identify the Plaintiffs by name or location. Notably, Plaintiffs do not allege that Mr. O'Donnell has ever publicly identified any of their individual congregations.

> 2. *There is no realistic concern that "grand jury materials" could be revealed by unsealing the docket, and a more limited protective order can protect against that.*

Plaintiffs also argue that "grand jury materials" *could* be revealed by the docket, but do not explain how that could happen. In fact, they do not identify any grand jury materials they believe to exist on the docket now. As the Third Circuit has emphasized, generic, conclusory arguments do not justify the sealing of any part of a presumptively public judicial proceeding:

> In order to override the common law right of access, the party seeking the closure of a hearing or the sealing of part of the judicial record "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller*, 16 F.3d at 551 (citing *Publicker*, 733 F.2d at 1071). In delineating the injury to be prevented, specificity is essential. *See Publicker*, 733 F.2d at 1071. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.

*In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). An order directing the parties not to file any document containing unredacted, non-public information concerning the grand jury investigation is sufficient to keep such information off the public docket.

> 3. *There is no realistic concern that either intercepted or attorney-client communications could be revealed by unsealing the docket, and a more limited protective order can protect against that.*

Mr. O'Donnell has already proposed a protective order that would direct that the parties not publicly file any unredacted document that reveals the content of the assertedly privileged

- 4 -

communications or allegedly "intercepted communications"[3] *i.e.*, the content of the February 16, 2023. Such an order would also serve to keep any and all possible information "relating to" a grand jury investigation, any privileged communications, and the contents of any alleged wiretaps from the docket sheet. Plaintiffs never explain why an order tailored to redact only the protected information while preserving the public's right of access to the non-protected information would cause them any concrete harm. *See In re Cendant Corp.*, 260 F.3d at 194.

    4.    *There is no basis for imposing a gag order on Mr. O'Donnell.*

On pages 7-8 of their brief, Plaintiffs make the stunning argument that the docket should be sealed to prevent Mr. O'Donnell from speaking about the case:

> Even if sealing the docket is not required under grand jury secrecy laws, this Court could still seal the docket to prevent Mr. O'Donnell's use of these records to promote what he believes to be a public scandal. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (listing cases where the right of FILED UNDER SEAL 8 public access has been denied to ensure records are "not 'used to gratify private spite or promote public scandal[,]'" "serve as reservoirs of libelous statements for press consumption," or "harm a litigant's competitive standing.")…

Pl. Br. at 7-8. Plaintiffs are, in essence, asking this Court to seal the case in its entirety as a *de facto* "gag order" that precludes Mr. O'Donnell from speaking about the case *at all*. That is an extraordinary and utterly unsupportable request.[4] The fact that child abuse has allegedly been perpetrated within and facilitated by some Jehovah's Witness congregations is certainly

---

[3] Mr. O'Donnell contests both the privilege claimed by Plaintiffs and the allegations of "interception."

[4] A court has the authority to restrict a litigant's speech about a case where "the Order is justified by a sufficiently serious risk of prejudice to an ongoing judicial proceeding;" and "less restrictive alternatives would [not] adequately address that risk;" and "the Order is narrowly tailored…." *United States v. Trump*, 88 F.4th 990, 1007 (D.C. Cir. 2023), (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976), *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075–1076 (1991)). A "substantial likelihood of material prejudice" is required to justify such an order. *United States v. Scarfo*, 263 F.3d 80, 93 (3d Cir. 2001).

horrifying—even "scandalous," but that does not make Mr. O'Donnell a scandalmonger or deprive him of his First Amendment rights. All he has done is report truthfully what he has learned about child sexual abuse in the Jehovah Witness community and the concerted and ongoing efforts of Jehovah Witnesses' congregations to cover it up. Plaintiffs are entitled to seek any damages, if they can prove them, that result from his reporting. They are not entitled to use this litigation to limit that reporting.

Mr. O'Donnell would abide by any protective order entered by this Court, including one that restricts his ability to discuss the meeting of February 16, 2023, or the specific identities of the Plaintiffs in this matter. Plaintiffs' request that the Court further restrict his speech suggests an agenda that has nothing to do with their claims for damages.

> 5. *This Court can and should issue a properly supported and defined protective order without waiting for either the conclusion of the Attorney General's investigation or the completion of discovery.*

Plaintiffs suggest that this Court is incapable of determining what should be kept confidential and what should not be. District court judges make those kinds of judgments every day. *See, e.g., In re Grand Jury Investigation,* 903 F.2d 180, 182 (3d Cir. 1990) (distinguishing between information that is protected and information that is not). Discovery will not assist the Court in determining what categories of information are privileged or otherwise protected. Aside from "[b]road allegations of harm, bereft of specific examples or articulated reasoning," Plaintiffs do not explain what would be complex or challenging about making that determination in this case.

Mr. O'Donnell has proposed a protective order that protects the contents of any communications Plaintiffs allege to be either privileged or intercepted, as well as any non-public information concerning the grand jury proceeding. Such an order would cover all the content of the February 16, 2023 meeting—including the information that Mr. O'Donnell contends is

neither privileged nor confidential. The content of the February 16, 2023 meeting will not change as the grand jury investigation moves forward.[5] Nor will it change through the course of discovery. If the Court issues a protective order that requires the parties to keep all information shared at the February 16, 2023 meeting confidential, there is no risk that the protective order will prove too narrow. It could, further into the litigation, be found to be too broad, but that is easily remedied. *See In re Newark Morning Ledger Co.*, 260 F.3d at 228 (directing district court to complete its review and unseal "all non-secret material").

WHEREFORE, Mr. O'Donnell respectfully requests the Court deny Plaintiffs' new request to seal the entire docket and grant his motion for unsealing and entry of an appropriately limited protective order.

Respectfully submitted,

Dated: June 28, 2024

/s/*Mary Catherine Roper*
Mary Catherine Roper
John Grogan
David Nagdeman
LANGER, GROGAN & DIVER P.C.
1717 Arch St., Ste 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703
mroper@langergrogan.com,

*Counsel for Defendant*

---

[5] If, indeed, the unfolding grand jury investigation would meaningfully affect the information Plaintiffs contend should be confidential, then perhaps this litigation should be stayed until the investigation is completed. But Plaintiffs have not suggested that. Instead, they wish to conduct this litigation in secrecy.