IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BURHOLME CONGREGATION OF JEHOVAH'S WITNESSES,** *et al.*, | :<br>:<br>: Case No: 2:24-cv-0304-MRP<br>: |
| *Plaintiffs,* | :<br>: |
| v. | :<br>: |
| **MARK O'DONNELL** | : **FILED UNDER SEAL**<br>: |
| *Defendant.* | : |

**PLAINTIFFS' SUR-REPLY BRIEF
IN OPPOSITION TO DEFENDANT O'DONNELL'S MOTION FOR UNSEALING OF
THE DOCKET AND FOR ENTRY OF A LIMITED PROTECTIVE ORDER**

Plaintiffs Burholme Congregation of Jehovah's Witnesses, *et al.* (hereinafter "Congregations" or "Plaintiffs") respectfully submit this sur-reply brief responding to Defendant Mark O'Donnell's ("O'Donnell" or "Defendant") reply brief. While many of the arguments contained in O'Donnell's reply are rebutted by the Congregations' principal brief, and need not be reiterated here, the Congregations feel compelled to write this sur-reply to correct what appears to be a misrepresentation of their position.

Nothing in the Congregations' principal brief should be construed as seeking a "gag order" preventing O'Donnell from commenting on the handling of child sexual abuse allegations by the Jehovah's Witnesses using information *obtained by lawful means*. While O'Donnell's allegations of a systemic cover-up are demonstrably false – and not a single Jehovah's Witness elder has *ever* been criminally charged (let alone convicted) for failing to report child sexual abuse in violation of Pennsylvania law – the Congregations seek to take no action in this litigation to silence O'Donnell in the *lawful* exercise of his free speech, however misguided it may be.

However, there is nothing lawful about O'Donnell's criminal actions in eavesdropping on

1

a confidential Microsoft Teams call between the Congregations and their attorneys about how to respond to a grand jury subpoena in an ongoing grand jury investigation. While our Supreme Court has recognized a First Amendment right to publish information derived from an illegal tape recording of a private conversation involving a matter of public concern when the publisher(s) played no part in the illegal interception, it has never extended that right to the party *actually responsible* for the illegal interception. See *Bartnicki v. Vopper*, 121 S.Ct. 1753, 1765 (2001).

O'Donnell's illegal interception/publication of a privileged conversation between the subjects of an ongoing grand jury investigation and their attorneys about how to respond to a grand jury subpoena is the *sine qua non* of the instant lawsuit. There is nothing about this privileged conversation between lawyer and client that makes it a matter of public concern, and merely seeking damages against a party for unlawfully intercepting the communication should not convert something that is supposed to be secret into a matter for public consumption – particularly when the grand jury's investigation is ongoing. See *Castellani v. Scranton Times, L.P.*, 956 A.2d 937, 942 (Pa. 2008) ("The news media should not act as a protective vessel into which criminal communications are channeled" when reporters invade the grand jury process and pierce its veil of secrecy). Since O'Donnell proudly admits to being the one who acquired/disclosed the communication at issue, and does not shift responsibility for the interception upon another party, he is not the owner of a First Amendment or common law right to further reap the benefits of his illegal behavior and further damage his victims in the process.

The Pennsylvania Supreme Court's decision in *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013) (*Levy 1*), is distinguishable. At issue in *Levy I* was whether the names of Pennsylvania senators who were identified in billing records as having received representation in a grand jury investigation at public expense were exempt from the disclosure under the

Pennsylvania Right-To-Know Law pursuant to the attorney-client privilege. While the Pennsylvania courts did not reach the issue of federal and state grand jury secrecy until remand, *Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Commw. 2014) (*Levy 2*), there was no evidence in that case that the senators were anything other than witnesses. By contrast, in this case, all Pennsylvania congregations of Jehovah's Witnesses have been identified as subjects of the investigation, a fact highlighted in O'Donnell's YouTube Interview. See Amended Complaint (Doc. 21) at 71 (Exhibit A) ("there's thousands of Elders in PA [and] every single Elder is now on notice that they're under a criminal investigation . . . "). Under federal law, longstanding rules of grand jury secrecy aim to prevent the stigma of being subpoenaed and associated with persons or activities under criminal investigation. *Trump v. Vance*, 140 S.Ct. 2412, 2427 (2020). Thus, the *Levy* decisions are either contrary to federal law and/or distinguishable.

                                            Respectfully submitted,

                                            **COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC**

Date: July 9, 2024                              _____
                                            EDWARD SEGLIAS, ESQUIRE
                                            PA Identification No. 55103
                                            STEVEN WILLIAMS, ESQUIRE
                                            PA Identification No. 62051
                                            ASHLING A. EHRHARDT, ESQUIRE
                                            PA Identification No. 93787
                                            1600 Market Street, 32nd Floor
                                            Philadelphia, Pennsylvania 19103
                                            Tel.: (215) 564-1700
                                            Email: eseglias@cohenseglias.com
                                                      swilliams@cohenseglias.com
                                                      aehrhardt@cohenseglias.com
                                            *Attorneys for Plaintiffs Burholme Congregation of Jehovah's Witnesses, et al.*