# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BURHOLME CONGREGATION OF JEHOVAH'S WITNESSES, COVENTRY CONGREGATION OF JEHOVAH'S WITNESSES, EAST CONGREGATION OF JEHOVAH'S WITNESSES (GREEN LANE), FAIRMOUNT PARK TAGALOG CONGREGATION OF JEHOVAH'S WITNESSES, HINDI CONGREGATION OF JEHOVAH'S WITNESSES, HORSHAM CONGREGATION OF JEHOVAH'S WITNESSES, MOUNT PLEASANT CONGREGATION OF JEHOVAH'S WITNESSES, NORTH MOUNT PLEASANT CONGREGATION OF JEHOVAH'S WITNESSES, SPANISH CONGREGATION OF JEHOVAH'S WITNESSES (FAIRVIEW VILLAGE), WILLOW GROVE CONGREGATION OF JEHOVAH'S WITNESSES, AND WORCESTER CONGREGATION OF JEHOVAH'S WITNESSES, <br><br> Plaintiffs <br><br> v. <br><br> MARK O'DONNELL, <br><br> Defendant | **FILED UNDER SEAL** <br><br> **CIVIL ACTION** <br> **No.:** |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' *EX PARTE* MOTION TO SEAL

Plaintiffs Burholme Congregation of Jehovah's Witnesses, Coventry Congregation of Jehovah's Witnesses, East Congregation of Jehovah's Witnesses (Green Lane), Fairmount Park Tagalog Congregation of Jehovah's Witnesses, Hindi Congregation of Jehovah's Witnesses, Horsham Congregation of Jehovah's Witnesses, Mount Pleasant Congregation of Jehovah's Witnesses, North Mount Pleasant Congregation of Jehovah's Witnesses, Spanish Congregation of Jehovah's Witnesses (Fairview Village), Willow Grove Congregation of Jehovah's Witnesses, and Worcester Congregation of Jehovah's Witnesses (hereinafter collectively referred to as "Montgomery County Congregations"), submit this memorandum of law in support of their *ex parte* motion to seal the attached complaint, motion to seal, and this memorandum of law.

## INTRODUCTION

The Pennsylvania Office of Attorney General is currently conducting a state grand jury investigation into how Jehovah's Witnesses handle allegations of child sexual abuse. This investigation has attracted some notoriety,[1] and fourteen (14) individuals have already been charged in connection with the investigation. ███████████████████████

███████ On February 16, 2023, defendant Mark O'Donnell ("O'Donnell") secretly tapped into a Microsoft Teams meeting between representatives of the Montgomery County

---

[1] Marisa Kwiatkowski, *Jehovah's Witnesses reportedly under investigation by Pennsylvania Attorney General* (USA Today February 8, 2020) https://www.usatoday.com/story/news/investigations/2020/02/08/jehovahs-witnesses-under-investigation-pennsylvania-attorney-generals-office/2425260001/ (last accessed October 16, 2023); David Gambacorta, *Grand jury investigators are 'dead serious' about revealing sexual-abuse cover-ups among Jehovah's Witnesses* (Philadelphia Inquirer February 14, 2020) https://www.inquirer.com/news/jehovahs-witnesses-sex-abuse-cover-up-pennsylvania-grand-jury-investigation-20200214.html (last accessed October 16, 2023); David Gambacorta and Barbara Laker, Pa. attorney general charges four Jehovah's Witnesses with sexual abuse of 19 children (Philadelphia Inquirer October 22, 2022) https://www.inquirer.com/news/pa-jehovahs-witnesses-sex-assault-attorney-general-shapiro-20221027.html (last accessed October 16, 2023).

2

Congregations and two of their attorneys (from another law firm) ▮▮▮▮▮▮▮▮▮▮. O'Donnell, who is not a Jehovah's Witness (and was not invited to the meeting), subsequently disclosed parts of that highly confidential meeting on YouTube and Reddit.com, without naming the participants. To date, O'Donnell's posts have not attracted the attention of traditional media outlets reporting on the investigation.

Given the sensitivity of the subject matter involved, the Montgomery County Congregations are seeking to commence this action under seal, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ As explained herein, the federal courts have traditionally sealed the contents of illegal wiretaps ▮▮▮▮▮▮▮▮▮▮ from public view.

Presently, the Montgomery County Congregations are proceeding *ex parte* because the complaint has not yet been served on O'Donnell. Should the Court grant this *ex parte* motion, the Montgomery County Congregations will serve a copy of the sealed motion, memorandum of law, and complaint upon O'Donnell, who is free to petition the Court to unseal these documents if he so chooses.

## FACTUAL BACKGROUND

This case arises from O'Donnell's interception and partial disclosure/use of communications between the Montgomery County Congregations and their attorneys on February 16, 2023, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. § 2510 *et seq.*, the Pennsylvania Wiretapping & Electronic Surveillance Control Act ("Pennsylvania Wiretap Act"), 18 Pa. Cons. Stat. § 5701 *et seq.*, and Pennsylvania tort law.

A. <u>Jehovah's Witnesses</u>

Jehovah's Witnesses is a regularly established religion formed to promote the teachings of

3

Jesus Christ and follow the practices of the first century Christian congregation. The modern-day organization of Jehovah's Witnesses began at the end of the 19th Century, and currently consists of approximately 8.6 million members spread among over 119,000 congregations around the world, including over 300 congregations in Pennsylvania alone. Congregations of Jehovah's Witnesses are composed of individuals and families who gather together to worship in buildings called Kingdom Halls. Congregations in the United States are usually named after the city or town in which they hold meetings, and typically have between 75 and 125 members. Worship in each congregation is organized by a small group of spiritually mature men known as elders, who work in cooperation with one another as a body of elders to care for the spiritual needs of the congregation in accordance with the Bible and secular laws. Congregations communicate with their attorneys through their respective body of elders in matters involving the application of secular laws. Communications between the body of elders and their attorneys are made for the purpose of obtaining or providing legal advice to the congregation. These communications are intended to be confidential, and are ordinarily conducted outside the presence of third parties not part of the attorney-client relationship.

    B.    <u>O'Donnell</u>

O'Donnell is a former Jehovah's Witness who maintains a website entitled www.jwchildabuse.org, the stated purpose of which is to share "facts and information related to child abuse cases that involve the Jehovah's Witness Church." On his website, O'Donnell details information regarding his personal participation in a Pennsylvania grand jury investigation of the Jehovah's Witnesses. Among other things, O'Donnell's website details information regarding his appearances before the Pennsylvania grand jury, along with an image of a subpoena he received.

4

C. February 16, 2023 Meeting

On February 16, 2023, a meeting was held between two Pennsylvania attorneys and elders from eleven congregations of Jehovah's Witnesses in Montgomery County, Pennsylvania. This meeting was conducted online using Microsoft Teams, which is a software application that permits persons to communicate *via* video and audio means. This Teams meeting was only open to the body of elders of the eleven Montgomery County Congregations and no one else. To schedule the Teams meeting, the attorneys sent an email and Microsoft Outlook invitation to the coordinator of each of the eleven body of elders. Both the email and Outlook invite contained log-in information for the Teams meeting, which included a video and telephone link. The video interface of Teams allows persons to appear on video or to have video turned off; it also allows persons to access the meeting *via* the Internet, using a smartphone app, or by simply calling into the meeting. ▮

▮ The meeting began at 5:30 p.m. and lasted approximately 45 minutes.

D. YouTube Video

On or about February 19, 2023, O'Donnell participated in an interview that was recorded and posted on YouTube.[2] The video is entitled "Jehovah's Witnesses: Legal Woes, Washington State." During the interview (beginning at 1:04:18 through 1:13:57), O'Donnell revealed detailed information that could only have come from the February 16 meeting. ▮

---

[2] https://www.youtube.com/live/s84pgnRJtWg?feature=share.

██████████████████████████████████████

██████████████████████████████████ O'Donnell's YouTube interview describing the February 16 meeting was also posted to the website Reddit by a person named "John Redwood."[3] Upon information and belief, "John Redwood" is a pseudonym of O'Donnell.

E.   Discovery of Violation

The Teams software generates an attendance report, which reveals certain information about a concluded meeting, including who logged in and for how long. After O'Donnell's YouTube interview became public, the attorneys who participated in the February 16 meeting generated an attendance report. The attendance report revealed that someone with the phone number 410-258-3900 logged into the meeting approximately 30 minutes before the designated start time and stayed in the meeting for its duration – approximately one hour and thirty minutes in total. The area code 410 is for the Baltimore, Maryland area, where O'Donnell resides. Upon information and belief, based upon a public records search, the above-referenced phone number belongs to O'Donnell. Upon further information and belief, O'Donnell directly logged into the confidential and privileged February 16 meeting in a way to obscure his attendance, including signing on before the official start time (so as to not create an "alert" that someone new had joined) and using only a phone number rather than an identifiable screen name.

**ARGUMENT**

I.   **THE MOTION TO SEAL, MEMORANDUM OF LAW, AND COMPLAINT SHOULD BE SEALED.**

"A document in a civil action may be filed under seal only if: (1) the civil action is brought pursuant to a federal statute that prescribes the sealing of the record or of certain specific documents; or (2) the Court orders the document sealed." L. Civ. R. 5.1.5(a). "Where a document

---

[3] https://www.reddit.com/r/exjw/comments/116lpzt/breaking_from_exjw_critical_thinker_and_mark/.

6

is sealed pursuant to a federal statute, the continued status of the document under seal shall be governed by the relevant federal statute." L. Civ. R. 5.1.5(b). If no federal statute governs, the Court "may specify an appropriate date in the future when the document may be unsealed." L. Civ. R. 5.1.5(c)(1). "If the Court has not specified a date for the document to be unsealed, following the conclusion of the action including all appeals, or during the pendency of the action for good cause shown, a party seeking access may petition the Court to unseal the document, provided that at least sixty (60) days' notice is given to the party which originally requested sealing the document by court order." L. Civ. R. 5.1.5(c)(2). This period may be shortened for good cause shown. *Id*.

### A. Sealing Is Required Under the Omnibus Crime Control and Safe Streets Act (Title III) and the Pennsylvania Wiretapping Act.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") and the Pennsylvania Wiretap Act prohibit the dissemination of the contents of an intercepted oral, wire or electronic communication unless otherwise authorized by those laws. 18 U.S.C. § 2511(c)(d); 18 Pa. Cons. Stat. § 5703(2)(3). The "contents" of a communication means "information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8); 18 Pa. Cons. Stat. § 5702. This mandate applies to the actions of private parties who engage in the illegal interception of such communications. *In re Nichter*, 949 F. Supp. 2d 205, 211 (D.D.C. 2013). When the contents of intercepted communications are filed in a court, and the applicable wiretap statute (federal or state) does not authorize public dissemination of those communications, it is appropriate for a court to maintain those communications under seal.[4] *See id.* (denying motion to unseal the illegal wiretap of the Democratic National Committee during the Watergate scandal);

---

[4] Title III and the Pennsylvania Wiretap Act specifically provide for sealing of communications intercepted by the government in accordance with those laws. 18 U.S.C. § 2518(8); 18 Pa. C.S. § 5714(b). That is not the case here, however.

7

*Karoly v. Mancuso*, 65 A.3d 301, 312 (Pa. 2013) (stating that a motion and brief regarding an intercepted communication between an attorney and a prisoner recorded by a correctional facility should have been filed by prosecutors under seal). Sealing is consistent with the purpose of Title III and the Pennsylvania Wiretap Act, which is to safeguard the privacy of oral, wire and electronic communications. *See Gelbard v. U.S.*, 408 U.S. 41, 48 (1972); *Karoly*, *supra*, 65 A.3d at 303. This is especially true for communications between attorney and client, which maintain their privileged character regardless of the interception. 18 U.S.C. § 2517(4); 18 Pa. Cons. Stat. § 5711.

The complaint in this case is based upon the "contents" of O'Donnell's illegal wiretap of the Microsoft Teams meeting between the Montgomery County Congregations and their attorneys. *See* Exhibit A. Therefore, this matter should proceed under seal to avoid the unauthorized dissemination of those illegally intercepted, privileged communications.

### B. Sealing Is Required Under Grand Jury Secrecy Laws.

"[L]ongstanding rules of grand jury secrecy aim to prevent" the stigma of being subpoenaed and associated with persons or activities under criminal investigation. *Trump v. Vance*, 140 S. Ct. 2412, 2427 (2020); *see also Impounded*, 277 F.3d 407, 411 (3d Cir. 2022) ("Among the interests protected by grand jury secrecy is the privacy interest of an investigation's subjects."). The federal common law privilege for state grand jury materials is the same as that embodied in the Federal Rules of Criminal Procedure. *See Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 178 (W.D. Pa. 1996) ("While the Third Circuit has not ruled on the status of the common law of a state grand jury privilege, other circuits and district courts have uniformly held that the standard is the same as that for disclosure of federal grand jury materials."); *Puricelli v. Borough of Morrisville*, 136 F.R.D. 393, 397 (E.D. Pa. 1991) (citing *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (6th Cir. 1980)) ("Upon review of caselaw, we find federal common law accords

8

state grand jury proceedings whose discovery is sought in civil cases the same protection afforded federal grand jury proceedings."). Under Pennsylvania law, the secrecy with which the grand jury operates serves multiple critical purposes, including "protect[ing] the innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *In re 2014 Allegheny County Investigating Grand Jury*, 223 A.3d 214, 234 (Pa. 2019) (internal question and citation omitted).

The complaint in the instant case is based upon O'Donnell's illegal wiretap of a Teams meeting between the Montgomery County Congregations and their attorneys ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ While O'Donnell only publicized certain aspects of the Teams meeting on the Internet, additional information ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is likely to be exposed to traditional media outlets if this litigation is conducted out in the open. Therefore, this matter should proceed under seal, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ so that the congregations do not have to choose between the privacy of their communications and vindication of their legal rights.

To be clear, the complaint does not describe testimony elicited before the grand jury. However, under both federal and state law, the protection afforded to "matters occurring before the grand jury" extends beyond the grand jury courtroom. See *United States v. Norian Corporation*, 709 Fed. App'x 138, 141 (3d Cir. 2017) (citing Fed. R. Crim. P. 6(e)) ("The touchstone is not what has been examined by the grand jury, but what may reveal the essence of what takes place in the grand jury room."); *U.S. v. Smith*, 123 F.3d 140, 149 (3d Cir. 1997) (citing Fed. R. Crim. P. 6(e)) ("Concomitantly, not only are grand jury materials themselves to be kept secret, but so are all materials that "relate to" grand jury proceedings."); *In re 2014 Allegheny*

9

*County Investigating Grand Jury*, 223 A.3d at 231 (citing 42 Pa. Cons. Stat. § 4549(b)) ("Plainly, grand jury secrecy reaches beyond what actually transpires in a grand jury room . . . ."); *In re Return of Seized Property of Lackawanna Cnty.*, 212 A.3d 1, 16 n.17 (Pa. 2019) (quoting Sara Sun Beale & William C. Bryson, *Grand Jury Law & Practice § 5.6*) ("If the disclosure of the documents in context reveals something about the grand jury's investigation, the policy of grand jury secrecy has been breached regardless of whether the documents on their face related directly to the grand jury's activities."). Candidly, precisely how far this protection extends beyond the grand jury courtroom is an open question, ███████████████████████████████████████████████████████████████████████████████████ Nevertheless, ███████████████████████████████████████████████████████████████████████████ it should be sealed in the same manner as "matters occurring before the grand jury."[5]

### C. Sealing Is Required Under the Attorney-Client Privilege

"Private and public interests strongly support the preservation of confidential attorney-client communications." *Casey v. Unikek Global Servs., Inc.*, 2015 WL 539623, at *7 (E.D. Pa. 2015). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). "Because of the sensitivity surrounding the attorney-client privilege, care must be taken that, following any determination that an exception applies, the matters covered by the exception be kept under seal or appropriate court-imposed privacy procedures until all avenues of appeal are exhausted."

---

[5] The decision whether to seal the record rests with this Court, not the supervising judge of the state grand jury. This is not a situation in which the congregations are seeking the disclosure of grand jury testimony. *See Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345 (3d. Cir. 2003) (holding that motions for disclosure of testimony before the Pennsylvania state investigating grand jury should be referred to the grand jury supervising judge).

10

*Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 97 (3d Cir.1992). "Failure to maintain such information under seal will cause a clearly defined and serious injury not only to the parties seeking closure but also to the public interest which the attorney-client privilege is designed to serve." *Dombrowski, v. Bell Atl. Corp.*, 128 F. Supp. 2d 216, 219 (E.D. Pa. 2000). "Protecting attorney-client communications and attorney work product are frequently found to meet the standard to be sealed." *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, No. 3:18-cv-153, 2021 WL 11879651, at *5 (E.D. Pa. 2021). Since the intercepted communication between the Montgomery County Congregations and its attorneys falls under the attorney-client privilege, the complaint should be sealed.

The attorney-client privilege has not been waived by virtue of O'Donnell's unlawful interception. See 18 U.S.C. § 2517(4) ("No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character."); 18 Pa. Cons. Stat. § 5711 (same). As set forth in the complaint, the Teams meeting between the Montgomery County Congregations and its attorneys was "otherwise privileged" because: (1) the meeting was intended to be confidential; (2) the attorneys involved took reasonable steps to prevent against inadvertent disclosure; and (3) O'Donnell was not invited to the meeting and ███████████████████. *See Shaffer v. Pennsbury School District*, 525 F. Supp. 3d 573 (E.D. Pa. 2021).

### D. Sealing is Not Prohibited by the First Amendment or the Common Law Right of Access to Judicial Records.

Ordinarily, both a First Amendment and common law right of access attaches to judicial proceedings and records. *See In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 924 F.3d 662, 670 (3d Cir. 2019) (discussing principles). Under the First Amendment approach, the federal courts employ the "experience and logic test." *Id*. at 673 ("We use a two-

11

prong test to assess whether the right of access attaches: (1) the experience prong asks whether the place and process have historically been open to the press; and (2) the logic prong evaluates whether public access plays a significant positive role in the functioning of the particular process in question.") (internal quotation and citation omitted). Under the common law approach, the federal courts simply ask whether the record in question is a "judicial record." *Id*. at 672 ("A judicial record is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.") (internal quotation and citation omitted).

The First Amendment and common law right of access to judicial proceedings and records is not absolute. In the usual case, one who seeks to seal a judicial record can overcome the common law presumption of access only by showing "that the interest in secrecy outweighs the presumption" and that "the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id*. (internal quotations and citations omitted). Overcoming the First Amendment right of access requires a district court to "articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard." *Id*. at 672-73 (internal quotation and citation omitted).

Fortunately, however, the analysis here is not an arduous one. The Third Circuit has held that there is no First Amendment or common law right of access to grand jury materials. *See U.S. v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997) (citing *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979)); *see also In re 2014 Allegheny County Investigating Grand Jury*, 223 A.3d 214, 229 (Pa. 2019). Moreover, the Supreme Court has extended the First Amendment right of access to illegal wiretaps only to those situations in which the publishing party was not

12

involved in the illegal interception. *Bartnicki v. Vopper*, 532 U.S. 514, 515 (2001); *see also In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 411 (2d Cir. 2009) (holding newspaper had no First Amendment or common law right of access to sealed wiretap applications); *In re Nichter*, *supra,* 949 F. Supp. 2d at 211. Therefore, there is no need for this Court to reinvent the wheel by analyzing whether the complaint (detailing an illegal wiretap of a privileged conversation between attorneys and their clients ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆) is permissible under constitutional and/or common law jurisprudence.

### E. The Motion to Seal is Not Moot Merely Because Part of the Intercepted Communication Has Been Disclosed to the Public.

The fact that O'Donnell has disclosed part of the intercepted communication to the public does not make this motion moot. In *Constand v. Cosby*, the Third Circuit held that an appeal seeking to restrain further dissemination of publicly disclosed information was moot. 833 F.3d 405, 409-10 (3d Cir. 2016). However, the *Constand* case did not involve illegal wiretaps, grand jury information or information protected by the attorney-client privilege. For these types of protected information, prior disclosure does not necessarily render a motion to seal to be moot. *See U.S. v. Smith*, *supra*, 123 F.3d at 154; *In re Nichter*, *supra*, 949 F. Supp. 2d at 211. Like *Smith*, sealing the instant motion/memorandum of law/complaint will inhibit the dissemination of this confidential subject matter to traditional media outlets, as well as prevent the widespread disclosure of additional, previously undisclosed grand jury material discussed during the intercepted Teams meeting that O'Donnell chose not to publicize. This is meaningful relief to the Montgomery County Congregations. Therefore, the motion to seal is not moot.

### F. The Court May Properly Consider the Motion to Seal *Ex Parte*.

This motion to seal is properly brought before this court *ex parte*. "In our adversary system, *ex parte* motions are disfavored, but they have their place." *Ayestas v. Davis*, 138 S. Ct. 1080,

13

1091 (2018). "Typical justification for the filing of motions on an *ex parte* basis include ongoing criminal investigations, safety considerations, or the protection of evidentiary privileges." *U.S. v. Heijnen*, No. CR 03-2071 JB, 2006 WL 1228828, at *3 (D.N.M. 2006). *Ex parte* motions are particularly prevalent in matters implicating grand jury secrecy. *See In re Grand Jury Matter*, 682 F.2d 61, 66 (3d Cir. 1982). Aside from statute, "[i]n order to justify *ex parte* relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and (2) that it is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Copelan v. Infinity Insurance Company*, 359 F. Supp. 3d 926, 928 (C.D. Cal. 2019) (internal quotation and citation omitted).

In this case, the Montgomery County Congregations would be irreparably prejudiced if they were required to publicly file and serve their complaint, motion to seal, and memorandum of law upon O'Donnell without a determination that these documents could be filed under seal, because to do so would result in the public dissemination of these materials prior to any ruling, defeating the very purpose of the motion. Moreover, the Montgomery County Congregations are not at fault for the actions of O'Donnell in intercepting their privileged communications. Additionally, the right to open judicial records belongs to the public as a whole, and a decision to grant the motion to seal does not affect O'Donnell's ability to contest the allegations in the complaint. Finally, O'Donnell will not be prejudiced by *ex parte* consideration of the motion to seal because he is free to petition this Court to unseal any sealed documents he receives when they are properly served upon him.

14

## CONCLUSION

Wherefore, the Montgomery County Congregations respectfully request that this Court grant their *ex parte* motion to seal – permitting the complaint, motion to seal, and memorandum of law to be filed under seal until further Order of this Court.

Respectfully submitted,

**COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC**

Date: January 22, 2024

EDWARD SEGLIAS, ESQUIRE
PA Identification No. 55103
STEVEN WILLIAMS, ESQUIRE
PA Identification No. 62051
ASHLING A. EHRHARDT, ESQUIRE
PA Identification No. 93787
1600 Market Street, 32nd Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 564-1700
Email: eseglias@cohenseglias.com
swilliams@cohenseglias.com
aehrhardt@cohenseglas.com

*Attorneys for Plaintiffs Burholme Congregation of Jehovah's Witnesses, Coventry Congregation of Jehovah's Witnesses, East Congregation of Jehovah's Witnesses (Green Lane), Fairmount Park Tagalog Congregation of Jehovah's Witnesses, Hindi Congregation of Jehovah's Witnesses, Horsham Congregation of Jehovah's Witnesses, Mount Pleasant Congregation of Jehovah's Witnesses, North Mount Pleasant Congregation of Jehovah's Witnesses, Spanish Congregation of Jehovah's Witnesses (Fairview Village), Willow Grove Congregation of Jehovah's Witnesses, and Worcester Congregation of Jehovah's Witnesses*

15