# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Burlholme Congregation of Jehovah's Witnesses, *et al.*,<br>　　　　　*Plaintiffs,*<br><br>v.<br><br>Mark O'Donnell,<br>　　　　　*Defendant.* | Civil Action No. 2:24-cv-304 |

## DECLARATION OF MARK O'DONNELL IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

I am Mark O'Donnell the defendant in this matter. I make this Declaration in support of my Motion for Protective Order.

1.　Since 2014, I have worked as a freelance journalist and writer. In that role, I have primarily investigated and then reported on the cover-up of child abuse allegations and actual child abuse within Jehovah's Witness congregations and by the Governing Body of the Jehovah's Witnesses, known as the Watchtower Organization.

2.　Throughout the events that constitute the basis of this lawsuit, I was acting as a journalist.

3.　The purpose of my work as a journalist is to ensure that facts regarding child sexual abuse within Jehovah's Witness congregations and facts regarding efforts by church leaders to cover up this abuse are uncovered and disseminated to the public.

1

4. It is only through publication of these facts that children within the Jehovah's Witness community will be safeguarded, abusers brought to account, survivors assisted in their recovery, and corruption within the leadership of the Jehovah's Witness community rooted out.

5. As part of my work as a journalist, I operate a website, JWChildAbuse.Org, where I publish some writings and the results of some of my investigations.

6. I am frequently invited to speak and to participate in programs through various media to discuss the problem of child sexual abuse within Jehovah's Witness congregations and the cover-up of such abuse by Church authorities.

7. In addition to what I have actually published, I have invested thousands of hours of work into my investigative work, some of which involve long-term investigations into specific instances or allegations of child abuse. I do all of this work as a public service, since those who abuse within the church may abuse children outside of the Jehovah's Witness Church. This is a serious public concern.

8. As a result of my work as a journalist and writer, I have been contacted by law enforcement authorities from at least six states who have asked me to support the investigation and prosecution of sexual abuse in cases arising within Jehovah's Witness communities.

9. I have twice testified before the Pennsylvania Attorney General's Grand Jury investigation into sexual abuse in the Jehovah's Witness community.

Some of the prosecutions that have resulted from that investigation began with information I was able to provide to the Attorney General.

10. I have also appeared as a fact witness in civil suits brought by survivors against Jehovah Witness congregations and their elders and against the Watchtower organization itself which has been alleged to have covered up child sexual abuse.

11. In the course of my work as a journalist, I am frequently approached by persons who have information regarding child sexual abuse within Jehovah's Witness congregations or concerning the cover-up of such abuse by Church authorities. Many of those people are Jehovah's Witnesses and will only speak to me on the condition that I do not disclose their identity because they fear retribution, including be subjected to a process known as "disfellowshipping" which is akin to shunning in other religious groups.

12. All of these informants, whether victims or whistleblowers, contribute to my journalism. It is because of these sources of information that I am able to bring these issues to the public's attention.

13. I do not believe that any current or former Jehovah's Witnesses would provide information to me if they did not believe that I would protect their identity.

14. In this instance, I assured the confidential informant who provided me with the invitation to the Teams meeting that I would protect his identity.

15. I know from first-hand experience that disfellowshipping and the threat of disfellowshipping is a severe and life-altering sanction.

16. Disfellowshipping is common in cases of people who are publicly or privately critical of Jehovah's Witness congregations, leaders and policies and especially anyone who is critical of higher Church authorities including especially the Watchtower Organization.

17. Although I was raised and baptized as a Jehovah's Witness, I no longer consider myself a member of that community. In papers filed in this litigation, Plaintiffs have referred to me as an "ex" Jehovah's Witness. I have been told that the Jehovah's Witnesses have declared me to be disfellowshipped, but I have never seen the relevant documentation to establish that. The Jehovah's Witnesses employ a standard form document known as an S-77 when a member has been disfellowshipped. Although I have never seen an S-77 indicating that I have been disfellowshipped, I have suffered the severe harm associated with disfellowshipping and believe that I have been formally disfellowshipped.

18. Disfellowshipping is particularly harsh because Jehovah's Witnesses, especially those raised from childhood within the Jehovah's Witness community, are encouraged to restrict their close relationships, and even their professional connections, to other Jehovah's Witnesses. Friendships and more intimate relationships outside the Jehovah's Witness community are strongly discouraged.

19. Therefore, in my case, my entire community of support including my family, nearly all of whom are Jehovah's Witnesses, were expected to cut off relationships with me. This is a phenomenon akin to "shunning" in other religious communities. In addition, my disfellowshipping cost me my livelihood, because I

had built my business relying on fellow Jehovah's Witnesses as both employees and customers, and I lost both. My disfellowshipping was and continues to be extremely painful. Disfellowshipping and the subsequent shunning it implies has caused severe financial, emotional and spiritual harm to me. I would not wish it on anyone else.

20. Based on my own experience, I have serious, well-founded concern that if the identity of my confidential informant is disclosed, he too will suffer either "disfellowshipping" or its effective equivalent.

I declare under penalty of perjury that the foregoing statements are true and accurate.

Date: April 2nd, 2025

Mark O'Donnell

5