# EXHIBIT B

2017 WL 3314269 (Pa.Com.Pl.), 45 Media L. Rep. 1808 (Trial Order)
Court of Common Pleas of Pennsylvania.
Beaver County

Connie JAVENS and Renee Javens, Zuk, Plaintiffs,

v.

John DOES (1) - (6), Defendants.

No. 10550 - 2016.
March 9, 2017.

**Opinion**

John A. Bozza, Judge.

**JURY TRIAL DEMANDED**

**\*1** Bozza, John A., S.J.

**I. *INTRODUCTION***

On May 2, 2016, the Plaintiffs, Connie Javens ("Ms. Javens") and Renee Javens Zuk ("Ms. Zuk"), ("Plaintiffs") filed a Motion for Issuance of a Subpoena individually verified by each plaintiff. It was directed to the BeaverCountian, a non-party in this litigation. The Motion alleged that the BeaverCountian had knowledge of the names and IP addresses of certain individuals the Plaintiffs claim posted defamatory comments about them on the BeaverCountian's website. An individual by the name of John Paul Vranesevich ("Mr. Vranesevich") is the owner/custodian of BeaverCountian.com. Specifically, the proposed subpoena sought the names of persons posting comments under the pseudonyms of "The Bigdigger", the "EXECUTIONER", "John Q Taxpayer", "Slicer", "Courthouseconvicts" and "ConnieintheSlammer." The Motion was initially granted by the Honorable Deborah Kunselman, Judge of the Court of Common Pleas of Beaver County, and a subpoena was served accordingly.

The BeaverCountian, John Q Taxpayer and John Does (1), (2), (3), (4), (5) and (6) filed Motions to Quash. The matter was set for argument following the recusal of the judges of Beaver County on November 14, 2016, at which time limited testimony was presented on behalf of the BeaverCountian. The request of the Plaintiffs to file affidavits was granted by the Court.

Following argument, the Court granted the parties the opportunity to file supplemental briefs to address the core issues that became apparent during the argument. Following an extension of time granted to the parties, additional briefs were provided to the Court.

Two distinct legal conceptualizations are at the heart of this controversy. John Paul Vranesevich and the BeaverCountian have asserted that the subpoena must be quashed because of the provisions of 42 Pa.C.S. §5942, commonly known as the "Shield Law." In addition and in concert with the John Does and John Q Taxpayer, the BeaverCountian asserts that the subpoenas should be quashed because the parties have a First Amendment right to anonymously post the comments in question and further arguing that the Plaintiffs have failed to meet their burden to establish their right to receive the requested information.

## II. *FACTS*

Given the procedural posture of the case, the factual nature of this dispute is set forth below and limited to allegations contained in the Motion for Issuance of a Subpoena, the Motions to Quash, the Affidavits and the testimony provided at the time of argument. The pertinent factual assertions can be summarized as follows:

1. The BeaverCountian.com ("BeaverCountian") is an independent, internet only news site that specializes in investigative journalism, focusing on public corruption and operated by John Paul Vranesevich who also uses the name "John Paul" when he writes articles posted on the site.

2. The BeaverCountian has a general readership of approximately 40,000 on a monthly basis and publishes as frequently as multiple times a day and numerous times a week.

**\*2** 3. The BeaverCountian website makes provisions for readers to post comments anonymously.

4. The BeaverCountian website has been a finalist for the "Golden Quill" award by the Western Pennsylvania Press Club on three (3) occasions and has covered the campaigns of both candidates in the most recent presidential election.

5. They have conducted various journalistic investigations of public officials in Beaver County, including the Beaver County sheriff. The BeaverCountian obtains information from various sources including tips and comments posted anonymously on the website.

6. John Q Taxpayer and one of the John Does have provided information by a way of comments on the website that have "informed" Mr. Vranesevich's reporting and were sources of information to the BeaverCountian.

7. John Q Taxpayer provided information used by Mr. Vranesevich and the BeaverCountian in reporting on Ms. Javens.

8. The bigdigger also provided information on stories published by the BeaverCountian and Mr, Vranesevich.

9. The content of the posts at issue are not confidential as they are accessible by anyone visiting the website.

10. The actual names of the posters of comments in this dispute are not known to the public because they were provided to the BeaverCountian anonymously.

11. Ms. Javens is the treasurer of Beaver County and mother of Plaintiff, Ms. Zuk.

12. Ms. Javens has alleged that the comments at issue have caused her "mental anguish, sleepless nights and humiliation."

13. Ms. Javens has asserted in her pleading that the accusations regarding stealing money, embezzlement and bribes are defamatory and that she is an innocent victim.

14. Ms. Zuk has alleged that she has suffered "great mental suffering," "sleepless nights and anger," humiliation and embarrassment resulting in the loss of hair and doctor's care and that she is an innocent victim.

15. In their Motion for Issuance of a Subpoena, while both Ms. Javens and Ms. Zuk have generally alleged that the statements that are the subject of the Motion were defamatory in nature, they did not specifically identify which provisions of the postings were false and they have not provided any evidence that particular portions of the statements are false.

16. They further allege that the information they seek is not available from any other source or means. They do not indicate any steps they have taken to learn the names of the posters, nor otherwise describe why there is no other source of the information they seek.

17. The BeaverCountian had published articles about Ms. Javens, about Ms. Javens' alleged inappropriate use of county funds in 2015 and 2016.

18. Ms. Zuk was the subject of articles about alleged favored treatment she received in obtaining work as a beautician. Such as, specific articles suggesting that Ms. Zuk obtained a job or got reinstated in a job with a government contractor as a result of her mother's intervention.

19. Many more comments about Ms. Javens and Ms. Zuk were published beyond those set forth in the Plaintiff's Motion.

20. The Motion for Issuance of a Subpoena alleges that "The bigdigger" published six (6) comments concerning Ms. Javens. Those comments contain various derogatory expressions of opinion about Ms. Javens; each in some manner asserting that she has been dishonest. Specifically, there are allegations that she has stolen money, taken bribes and reaped monetary benefits for her and her children while living a lavish lifestyle.

**\*3**  21. The "EXECUTIONER's" statements assert that Ms. Javens is stealing and embezzling.

22. "John Q Taxpayer" stated that she was stealing and tampering with evidence of crimes.

23. The "Slicer" stated that she is stealing.

24. The "Courthouseconvicts" has claimed that she is stealing.

25. Concerning Ms. Zuk, "Connieintheslammer" states that Ms. Zuk is getting taxpayer money from her mother.

26. With regard to Ms. Zuk, the "EXECUTIONER" says that she is stealing money.

27. "The bigdigger" alleges that she has a "STD" and that she is a "slut" and that she has cheated on her husband.

### III. *LEGAL ANALYSIS*

#### A. *Shield Law*.

Pennsylvania's "Shield Law" set forth at 42 Pa.C.S.A. §5942(a) states as follows:
No person engaged in, connected with or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit.

Mr. Vranesevich, the owner/custodian of the BeaverCountian.com, was served with the subpoena described above. It is apparent Mr. Vranesevich is connected with and indeed publishes the BeaverCountian.com. The BeaverCountian.com is a website that posts articles that contain news concerning various matters of public interest. Mr. Vranesevich authors articles posted on the site. Further its publication online is available to anyone who wishes to access the website. In that sense, it constitutes a newspaper of general circulation. The fact that the content is published online rather than in a traditional format is inconsequential considering

the clear intent of the statute. There is no indication in the language of the Shield Law that its provisions are limited to publications printed in a traditional "hard copy" print format. Further, it is apparent that Mr. Vranesevich operates the website for the purpose of gathering, compiling and publishing news. Therefore the singular issue is whether the persons identified as targets in the subpoena are sources of information procured or obtained by Mr. Vranesevich.

In the analysis of the issue regarding the application of the Shield Law, one must begin with the recognition that it "must be liberally and broadly construed in order to carry out the clear objective and intent of the legislature…" *Castellani v. Scranton Times, L.P.*, 598 Pa. 283, 302, 956 A.2d 937 (Pa. 2008). In *Castellani* the Pennsylvania Supreme Court explicitly admonished that "any doubt as to the interpretation of the Shield Law must be liberally construed in favor of the news media…" because "they are the "watch dogs" and guardians of the general public welfare." *Id.* The *Castellani* court in affirming the Superior Court's decision determined that, notwithstanding a compelling concern for maintaining the secrecy of grand jury proceedings and ferreting out of crime and criminals, the intent of the Shield Law to protect a free press acting as "pro bono publico" must take precedence. *Id.* See, also, *In Re: Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 323, 19 A.3d 491, 505 (2011) (reiterating that the Shield Law provides absolute protection of a source's identity from compelled disclosure).

**\*4** Here the record establishes that at this stage of the proceedings the persons posting comments as "John Q Taxpayer" and "the bigdigger" were both sources of information provided to Mr. Vranesevich concerning his investigative reporting of Ms. Javens. The Plaintiffs have argued that the comments of the posters were not news information for Mr. Vranesevich and therefore not protected. Such a conclusion would require a narrow interpretation of the Shield Law which is an approach firmly rejected by our supreme court. The statute prohibits persons such as Mr. Vranesevich from being compelled to disclose "the source of any information procured or obtained" by him so long as the information was obtained "for purposes of gathering, procuring, compiling, editing or publishing news". 42 Pa.C.S.A. §5912(a).

Moreover, it is not the content per se that's protected, but rather the source. *Commonwealth v. Bowden*, 576 Pa. 151,838 A.2d 740 (2003). Nor are there any restrictions on the form of the content or where the content was disseminated and how it came to the attention of the person protected by the Shield Law. It is obvious that "John Q Taxpayer" and "the bigdigger" intended that their true identities be confidential to all but those operating BeaverCountian.com. Mr. Vranesevich used information provided by these two individuals to gather news to be published on the BeaverCountian.com. The Shield Law prohibits compelling disclosure of these two identities in this litigation. With regard to the remainder of the John Does, there is nothing in the record to indicate that they were sources of information to Mr. Vranesevich or anyone else associated with the BeaverCountian.com website. Therefore, the Shield Law is inapplicable to those commentators.

Finally there is no evidence before the court to indicate that "the bigdigger" and "John Q Taxpayer" were sources within the parameters of the Shield Law with regard to the comment posts concerning Ms. Zuk.

### B. *Defamation: Requirements for Disclosure of Anonymous Commentators*

It is apparent that BeaverCountian.com had published a series of articles about the alleged misappropriation of Beaver County funds by County Treasurer Ms. Javens. Various articles alluded to funds being distributed to entities identified as Friendship Ridge and Comprehensive Healthcare Services. Articles also made reference to a criminal investigation being conducted by the Beaver County District Attorney's office and the Pennsylvania State Police. The BeaverCountian also published an article reporting that Ms. Zuk was hired to work at Friendship Ridge at the urging of her mother, Ms. Javens. It further noted that other members of the Javens family had a financial relationship with Friendship Ridge. Over that period of time, numerous persons posted comments in response to the news stories, some of whom are identified in this litigation only anonymously. The right to anonymously engage in activity constituting "speech" within the ambit of the First Amendment has been thoroughly established in constitutional jurisprudence. *Watchtower Bible and Track Society of New York, Inc. v. Village of Stratton, et al.*, 536 U.S. 150, 122 S. Crt. 2080 (2002); *Pilchesky v. Gatelli*, 12 A.3d (2011). This applies to communications on the internet. *Reno v. ACLU*, 521 U.S. 844, 117 S. Crt. 2329 (1997). In *Pilchesky*, the Superior Court set forth the circumstances under which a shield of anonymity can be pierced. Relying on cases from other jurisdictions, the court adopted and applied a four-part test to

be utilized by trial courts in circumstances like those presented here. Under the test the court must be satisfied that the following requirements are met before disclosure of an anonymous speaker's identity may be compelled:
a. notification;

b. sufficiency of the evidence;

 *5  c. affidavit of good faith and necessity; and

d. balancing strength of claims against First Amendment rights.

*Id.*

Here there is no apparent concern about notification issues as the anonymously identified parties before the Court are represented by their respective counsel. However, there is a significant dispute whether the other requirements of the *Pilchesky* test had been met.

### 1. Sufficiency of the evidence

A person seeking the disclosure of the identity of an alleged defamer has the burden to "establish a *prima facie* case for all elements of a defamation claim within the plaintiff's control" sufficient to survive a motion for summary judgment. *Pilchesky* at 442 - 443. With regard to Ms. Javens, a public figure, this requirement is without the need to provide evidence of actual malice. *Id.* This may be done by using all the tools normally utilized in responding to a motion for summary judgment, i.e., affidavits, depositions and exhibits. This evidence is to be interpreted in a light most favorable to the plaintiffs consistent with Pennsylvania's clearly enunciated summary judgment standards.[1] Therefore, if the plaintiff establishes that there are material issues of fact in dispute, the motion for summary judgment must be denied. Importantly, however, reliance on factual allegations set forth in pleadings is not sufficient to defeat a summary judgment motion. Rather a non-moving party must present evidence in a manner acceptable in a summary judgment context, indicating the existence of a factual dispute with regard to a material issue in the case. *Id.*

[1] (a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

In a defamation case, it is necessary for a plaintiff to establish each of the elements as set forth in Pennsylvania law. The threshold requirements of a defamation action are set forth in 42 Pa.C.S.A. §8343 although each may be more or less at issue depending on the factual setting of the case. These include
1. The defamatory character of the communication;

2. Its publication by the defendant;

3. Its application to the plaintiff;

4. The understanding of the recipient of its defamatory character;

5. The understanding of the recipient of it as intended to be applied to the plaintiff;

6. Special harm resulting to the plaintiff from its publication;

7. Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. §8343; *Joseph v. Scranton Times L.P.*, 129 A.3d 404 (Pa. 2015). Notably, not included in the list of elements is a requirement for proving the falsity of the speech at issue. However Pennsylvania has long recognized that truth is an absolute defense to an action in libel. *Hepps, et al. v. Philadelphia Newspapers*, 506 Pa. 304; 485 A.2d 374 (1984); *Bobb v. Kraybill*, 354 Pa. Super. 361, 511 A.2d 1379 (1986). Consistent with this position 42 Pa.C.S.A. §8343(b) provides that a defendant has the burden of proving the truth of an alleged defamatory. This de facto and comprehensive presumption of falsity cutting across all plaintiffs was rejected by the United States Supreme Court in *Phila. Newspapers v. Hepps*, 475 U.S. 767; 106 S. Ct. 1558; 89 L. Ed. 2d 783(1986). In *Hepps* the U.S. Supreme Court held that a public figure plaintiff in a defamation action was required by the First Amendment to bear the burden of proving the falsity of alleged defamatory statements where speech is of public concern. The same rule does not apply in circumstances where the speech is entirely of private concern and the plaintiff is a private figure. *Id* at 775.

**\*6** A plaintiff whether a public or private figure most fundamentally has the burden proving the defamatory nature of the speech at issue. The Pennsylvania Supreme Court has reiterated that a plaintiff must demonstrate that a statement tends to so harm the reputation of another such that it lowers the person in the estimation of the community or that it deters third parties from associating or dealing with her. The person must show that he or she has suffered the kind of harm which has grievously fractured her standing in the community of respectable society. *Joseph* at 430.

With regard to any "Special harm resulting to the plaintiff from its publication" the Court in *Pilchesky* determined that in the context of a case such as the one presented here, the plaintiff, while having to show actual harm, does not have to demonstrate "special damages" or pecuniary loss. *Pilchesky* at 444. Special harm may include damage in the nature of mental anguish, embarrassment and humiliation. *Id.* The remaining elements set forth in 42 Pa.C.S.A. §8343 have not been contested at this stage of the litigation.

The factual record in this case is sparse. The only pleading of consequence filed by the Plaintiffs is a Motion for Issuance of a Subpoena. The Defendants have responded to that Motion by filing Motions to Quash and have included in the record references to numerous additional articles on the BeaverCountian web site posted in the recent past. The only evidence of the allegedly defamatory comments is contained in that Motion for Issuance of a Subpoena. The Plaintiffs' have filed separate affidavits that largely address the question of actual injury and do not add any additional information concerning the defamatory nature of comments. The affidavits allege in summary form the following:

1. Regarding Connie Javens that:
- The comments caused mental anguish, sleepless night and humiliation.

- Other people have questioned her conduct, inquiring why she is being accused of stealing and embezzling.


2. Regarding Renee Javens Zuk that:
- The comments caused great mental suffering, many sleepless nights and anger.

- The comments caused humiliation and embarrassment.

- She is under a doctor's care and losing her hair.

What is noticeably missing from the record is any evidence from either plaintiff that the comments and articles are not true. Indeed, there are neither assertions nor denials, anywhere in the motion or affidavits addressing the truthfulness of the myriad comments contained in the identified postings.[2]

[2]     Plaintiffs have seemed to suggest the Motion for Issuance of a Subpoena is in fact a form of affidavit.

A close reading of the comments make it clear that the posters set forth very specific facts and opinions about each Plaintiff. Concerning Ms. Javens they run the gamut from accusations of stealing and embezzling, to tampering with evidence. Regarding Ms. Zuk, the comments include allegations that she has stolen from taxpayers, has an "STD," that she has cheated on her husband and that she was a "slut." There is no evidence in the record that these assertions, as offensive as they may be, are not true. At most, there is a generalized allegation in the Motion for Issuance of a Subpoena that the Plaintiffs are "innocent victims of an offensive and scandalous attack on their reputation." Motion for Issuance of a Subpoena at para.20.

*Pilchesky* specifically requires that a reviewing court apply the standard for summary judgment to determine whether the Plaintiffs have met their burden to prove each element of a cause of action in defamation before forcing the disclosure of an anonymous speaker. At trial the threshold issue for Ms. Javens, as a public figure, is whether the statements in question which almost entirely center on her mishandling of county funds, an issue of public concern, are false. There are multiple assertions of fact and opinion in the comments of different posters set forth in a particularized context. Even if it were to be assumed that the Motion for Issuance of a Subpoena constituted an affidavit rather than a mere pleading, it is apparent that Ms. Javens has not introduced evidence from which a fact finder could conclude that her burden of establishing the falsity of these statements has been met. At this stage of the proceedings there is no evidence in the record that raises an issue of fact regarding the alleged truth of the comments regarded by the Plaintiffs as defamatory. Plaintiffs cannot rely on the generalized assertions that they have been defamed in order to overcome a motion for summary judgment. Such an allegation is akin to an averment in a complaint and does not constitute evidence.[3]

[3]     This applies to all of the defendants including those whose identities are protected by virtue of the Shield Law.

***7** With regard to Ms. Zuk the issue requires a closer analysis. She is not a public official and therefore not a public figure by virtue of her job alone. The question is whether she has attained public figure status through some other means. There are generally three ways in which a person may attain such status:

1. Involuntarily through no purposeful action;

2. Pervasive fame or notoriety such that one becomes public figures for all purposes;

3. Voluntary entry into a particular public controversy thereby becoming "limited purpose public figures"

See, *Wells v. Liddy* 186 F.3d 505(1999); see also *Getz v Robert Welch In*c.418 U.S.323; 94 S.Ct 997: 41 L.Ed 2d 789 (1974).

Here the only conceivable basis for concluding that Ms. Zuk should be regarded as a public figure is that she somehow voluntarily injected herself into the controversy swirling around her mother's actions in her capacity as county treasurer. The question is whether she is a "limited purpose public figure" such that she must prove the falsity of the comments as a part of her burden to establish a prima facie case of defamation. With regard to this issue the record provides almost no support. The relevant allegations are that she benefitted from her mother's intervention in obtaining or retaining a position with Friendship Ridge. There is no indication that she took steps to place herself in the public light concerning this matter or any other matter touched on by the commentators. There is no factual basis for concluding that Ms. Zuk should be regarded as a limited purpose public figure and consequently she is acting as a private party seeking relief from private parties (at least to the extent that their real identities are not known at this time) and it is the defendants who are required to establish the truth of the comments they made. 42 Pa.C.S.A. §8343(b).[4]

4   **b)** *Burden of defendant* --
   In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
   (1) The truth of the defamatory communication.

Turning then to the defamatory character of the comments, the question is "whether the statement tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Tucker v.Phila. Daily News,* 577 Pa. 598,615, 848 A.2d 113,124 (2004). Protection of an individual's reputation is the essence of an action in defamation. *Joseph v. Scranton Times L.P.,* 129 A.3d 404(2015). An accusation that a public official is abusing the authority of her office in some manner may constitute defamation. *MacElree v. Philadelphia Newspapers,* 544 Pa. 117; 674 A.2d 1050 (1996). (A jury could properly find that statements alleging that a district attorney acted in a racist manner constituted defamation).

Here the statements at issue all allege that Ms. Javens has abused her office in some manner and specifically accuse her of dishonesty while serving as a treasurer. It is beyond doubt that statements implicating criminal wrongdoing are capable of a defamatory meaning. Specifically comments of each of the posters that concern stealing, embezzlement and tampering with evidence are well within the gambit of communications that a fact finder could determine to be defamatory.

Concerning Ms. Zuk a similar conclusion must be reached. In addition to an allegation of stealing by "connieintheslammer" and "THE EXECUTIONER", "thebigdigger" asserted that she had a "STD", cheated on her husband and was a slut. These are statements that a jury could justifiably find that tend to so harm her reputation as to lower her in the estimation of the community.

\*8  This court disagrees with the John Does' position that the word "slut" is too vague to be capable of defamatory meaning. When viewing the overall context of the statements posted by "the bigdigger" the defamatory character of the assertions are apparent and capable of proof of their veracity.

The defendants have argued that the overall news coverage of Ms. Javens' alleged involvement in the abuse of her office was so pervasive that the damage done by the posters could only be minimal and not independently caused sufficient actual harm to constitute actionable defamation. This claim is better addressed in the context of a subsequent analysis balancing the strength of her claims against the first amendment rights of the defendants.

**2. Affidavit of good faith and necessity.**

The court in *Pilchesky* concerned about the prospect that claimants would pursue the disclosure of anonymous speakers unnecessarily and perhaps for improper motives adopted the requirement that one must demonstrate that her request is being made in good faith. *Pilchesky* at 445. The plaintiffs must attest to the fact that the disclosure information is "sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief." *Id.* at 444 - 445.

The amended affidavits filed by both plaintiffs are insufficient to meet these requirements. Neither affidavit includes averments with regard to any of the *Pilchesky* requirements. Ostensibly it is plaintiffs' position that their Motion for Issuance of a Subpoena contains sufficient averments to meet the affidavit requirements. Obviously a motion, while in this case similar, even verified by a plaintiff, is not an affidavit. The motion in question contains numerous assertions of both fact and law in a form calculated to obtain relief in the form of a subpoena. An affidavit of the type contemplated by the *Pilchesky* court is intended for a specific purpose and required to address particular concerns. Accepting plaintiffs' position *arguendo*, the Motion is none the less insufficient to meet the requirements at hand. There is no statement that the plaintiffs are acting in good faith, the very cornerstone of the affidavit requirement. Moreover they state that they need disclosure because without it they will be "unable to stop the defamatory attacks" suggesting that their intent is something other than pursuing a defamation action for damages but in taking some other action to silence their critics. At the very least their intent is ambiguous.

### 3. Balancing test

Finally, and of critical importance, it is necessary for the court to balance the strength of the plaintiffs prima facie case against the defendant's first amendments rights. *Id.* at 445. Specifically the court is required to engage in an analysis that considers the defamatory nature of the comments, the quantity and quality of the evidence presented and whether the comments were privileged. In doing so it is important to note the appellate court's admonition that comments on matters of public importance and those critical of public officials are entitled to robust protection. *Id.* at 445.

Ms. Javens is a public official whose actions as treasurer have been the target of extensive press coverage. There have been a number of online articles reporting on her allegedly dishonest or improper conduct including reports of official investigations into her conduct in office. There were numerous online comments posted at the BeaverCountian.com, while only a portion of which have been identified in this action. It is not possible to gage the extent to which the posts in question would have a defamatory impact or be responsible for the alleged injuries when compared to the entirety of media reports concerning much the same assertions of misconduct. The nexus between the statements at issue and the generalized assertion of harm is not strong. This diminishes the strength of her case.

**\*9** Moreover Ms. Javens' factual record in support of her Motion seeking disclosure is thin at best. As noted above there are no specific evidence from which one could conclude that the allegedly defamatory statements are not true. The only factual averment in the record in this regard is the general statement in the plaintiff's Motion that they are "innocent victims of an offensive and scandalous attack on their reputation" without any delineation with regard to the contents of the numerous comments they cite. This greatly diminishes the strength Ms. Javens' case.

The online comments at issue center on matters of importance concerning illegal behavior and nepotism on behalf of the county's treasurer. The right to speak anonymously about matters of critical importance to the citizenry cannot be compromised without substantial justification. In the circumstances of this case that right must take precedence.

Concerning Ms. Zuk the comments implicating her sexual behavior have nothing to do with either her mother's government responsibilities or the allegation of nepotism. They are not directed to any matter of public concern. The notions that she is a slut, contracted a sexually transmitted disease and cheated on her husband certainly have the potential for harming her reputation in the community and deterring third parties from associating or dealing with her. However Ms. Zuk has not met the threshold requirements of *Pilchesky* as more fully discussed above. As a consequence her request for disclosure must also fail.

An appropriate order shall follow.

<<signature>>

John A. Bozza

Senior Judge

### ORDER

AND NOW, this 7 day of March, 2017, upon consideration of the Plaintiffs Motion for Issuance of a Subpoena, the Motions to Quash filed by The BeaverCountain, John Q Taxpayer and John Does (1)-(6), the affidavits filed by the Plaintiffs, the briefs, supplemental briefs and arguments of counsel conducted on November 14th, 2016, and for the reasons set forth in this Court's Opinion,

IT IS HEREBY ORDERED that the Motions to Quash filed by The BeaverCountain, John Q Taxpayer and John Does (1)-(6) are GRANTED.

<<signature>>

John A. Bozza

Senior Judge

---

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.