UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Burlholme Congregation of Jehovah's Witnesses, *et al.*,<br><br>          *Plaintiffs,*<br><br>          v.<br><br>Mark O'Donnell,<br><br>          *Defendant.* | Civil Action No. 2:24-cv-304 |

BRIEF IN SUPPORT OF DEFENDANT MARK O'DONNELL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Mary Catherine Roper
John J. Grogan
David Nagdeman
LANGER GROGAN & DIVER PC
1717 Arch St., Ste 4020
Philadelphia, PA 19103
(215) 320-5660
mroper@langergrogan.com
jgrogan@langergrogan.com
dnagdeman@langergrogan.com

*Attorneys for Defendant*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Introduction .........................................................................................................1

II.     Factual Background .............................................................................................2

III.    Legal Standard......................................................................................................4

IV.     Argument .............................................................................................................5

    A.      Because Plaintiffs Are Not Living Individuals, Plaintiffs Cannot
            Bring Invasion of Privacy Claims under Pennsylvania Law, and
            Count IV of the Amended Complaint Should Therefore Be Dismissed ..... 5

    B.      Because the Alleged Interception Did Not Take Place in Pennsylvania,
            the Pennsylvania Wiretap Act Does Not Apply, and Count II of the
            Amended Complaint Should Therefore Be Dismissed................................ 7

    C.      The Court Should Bar Plaintiffs' Requests for Damages in Excess of
            the Relevant Statutory Provisions ............................................................. 9

V.      Conclusion...........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................4, 5

*Arnold v. Pennsylvania Department of Transportation*,
477 F.3d 105 (3d Cir. 2007) ........................................................................................6

*Butler Area School District v. Pennsylvanians for Union Reform*,
172 A.3d 1173 (Pa. Commw. Ct. 2017)......................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................5, 8

*DirecTV, Inc. v. Brown*,
371 F.3d 814 (11th Cir. 2004)...................................................................................10

*DirecTV, Inc. v. Kaas*,
294 F.Supp.2d 1044 (N.D. Iowa 2003) .....................................................................10

*DirecTV, Inc. v. Neznak*,
371 F.Supp.2d 130 (D.Conn. 2005) ..........................................................................10

*DirecTV, Inc. v. Perrier*,
No. 03–CV–400S, 2004 WL 941641 (W.D.N.Y., Mar. 15, 2004)...............................10

*DirecTV, Inc. v. Walsh*,
540 F.Supp.2d 553 (M.D. Pa. 2008) .........................................................................10

*Dorris v. Absher*,
179 F.3d 420 (6th Cir. 1999)....................................................................................10

*Dupree v. Younger*,
598 U.S. 729 (2023).....................................................................................................4

*FCC v. AT&T Inc.*,
562 U.S. 397 (2011).....................................................................................................6

*Huffman v. Office of Personnel Management*,
263 F.3d 1341 (Fed. Cir. 2001) ................................................................................12

*Hutchins v. Clarke*,
07-C-526, 2009 WL 10710791 (E.D. Wis. May 15, 2009) ........................................12

*Larrison v. Larrison*,
750 A.2d 895 (Pa. Super. Ct. 2000) ...................................................................1, 7, 8

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).....................................................................................................4

*Monico v. City of Cornelius*,
13-CV-02129-HZ, 2015 WL 1538786 (D. Or. Apr. 6, 2015) ....................................13

*Nabisco, Inc. v. Ellison,*
   CIV. A. 94-1722, 1994 WL 622136 (E.D. Pa. Nov. 8, 1994)......................................6

*Popa v. Harriet Carter Gifts, Inc.,*
   52 F.4th 121 (3d Cir. 2022)................................................................. 1, 7, 8

*Reynolds v. Spears,*
   93 F.3d 428 (8th Cir. 1996)..................................................................10

*Reynolds v. Spears,*
    857 F.Supp. 1341 (W.D. Ark. 1994) ...................................................10

*Scott v. Harris,*
   550 U.S. 372 (2007)..........................................................................4

*Standiford v. Standiford,*
   598 A.2d 495 (Md. App. 1991) ...........................................................13

*Teri Woods Pub., L.L.C. v. Williams,*
   CIV.A. 12-04854, 2013 WL 1500880 (E.D. Pa. Apr. 12, 2013) ................................6

*United States v. Iannelli,*
    477 F.2d 999 (3d Cir. 1973) .............................................................12

*United States v. Morton Salt Co.,*
   338 U.S. 632 (1950)........................................................................6, 7

*Vogel v. W. T. Grant Co.,*
   327 A.2d 133 (Pa. 1974)......................................................................6

**Statutes**

18 Pa. C.S. § 5701 ..............................................................................3

18 Pa. C.S. § 5703 ..............................................................................9

18 Pa. C.S. § 5725 ..............................................................................9

18 U.S.C. § 2510.................................................................................3

18 U.S.C. § 2511.................................................................................9

18 U.S.C. § 2518................................................................................12

18 U.S.C. § 2520.............................................................................9, 10

Md. Cts. & Jud. Pro. § 10-401 ...................................................................3

Md. Cts. & Jud. Pro. § 10-402(a)(1)-(3) ........................................................9

**Rules**

Fed. R. Civ. P. 56 .......................................................................4, 5, 8, 9

**Other Authorities**

Restatement (Second) of Torts § 652I (1977).............................................1, 5, 6

iii

## I.   Introduction

In order to narrow triable issues for the trial before a jury in October, Defendant Mark O'Donnell moves the Court for summary judgment on Counts II (Pennsylvania Wiretap Law) and IV (invasion of privacy) of Plaintiffs' Amended Complaint, ECF 21, and for an Order limiting Plaintiffs' requested statutory relief at trial to the statutorily permissible damages under the remaining wiretap claims.

The Amended Complaint sets out four causes of action related to Defendant Mark O'Donnell's attendance at a Microsoft Teams meeting between Plaintiff Jehovah's Witness congregations and their attorneys and later disclosure of information learned at that meeting. Two of those causes of action fail to state a claim on the undisputed facts of record here. First, Plaintiffs' invasion of privacy claim fails because Plaintiff congregations are not individuals and, therefore, they do not possess a right of privacy under the law that can be violated. Restatement (Second) of Torts § 652I (1977) ("[A]n action for invasion of privacy can be maintained only by a living individual whose privacy is invaded."). Second, Plaintiffs' claim under the Pennsylvania Wiretap Law fails because Mr. O'Donnell attended the Microsoft Teams meeting using his computer in Maryland and that law does not extend to "conduct occurring wholly outside the Commonwealth." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022) (citing *Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. Ct. 2000)).

In addition to dismissing these claims, Defendant requests the Court to narrow Plaintiffs' expansive request for relief under the Federal Wiretap Law and the

Maryland Wiretap Law.[1] Under these statutes, if liability is established, Plaintiffs are entitled to statutory damages of $100 per "day of violation" or $1,000 (Maryland) / $10,000 (Federal), whichever sum is greater. Plaintiffs have alleged a single interception and two discrete disclosures, taking place over at most three days, meaning that they could be entitled to $1,000 per Plaintiff under the Maryland Wiretap Law and $10,000 per Plaintiff under the Federal Wiretap Law. Based on a novel theory of "continuing disclosure," which has no support in the statutory text, the case law, or any reasonable construction of the statutes, Plaintiffs request damages for every day that the YouTube video was online. Am. Compl. ¶¶ 92, 108, 124. This request for relief should be stricken and limited to the statutorily authorized $1,000 per Plaintiff under the Maryland Wiretap Law and $10,000 per Plaintiff under the Federal Wiretap Law.

## II.    Factual Background

Mr. O'Donnell contests liability as to all of the claims brought against him but seeks summary judgment only as to those claims that do not turn on disputed issues of fact. Because the Court is familiar with the underlying facts of the case, Mr. O'Donnell offers this brief factual statement, limited to the issues raised in his motion.

This lawsuit is brought by ten congregations of Jehovah's Witnesses, each of which is either an unincorporated association or a Pennsylvania nonprofit corporation. Def's SUF ¶ 1. Plaintiffs allege that representatives of each Plaintiff

---

[1] And the Pennsylvania Wiretap Law, if that claim proceeds.

congregation, known as elders, attended a Microsoft Teams meeting on February 16,

2023, which Mr. O'Donnell also attended. Am. Compl. ¶ 3, ECF 21. They allege that

he then disclosed information learned at that meeting on YouTube and Reddit.com.

Am. Compl. ¶ 7. The congregations contend that he attended the meeting and

disclosed the information so obtained so without authorization and therefore in

violation of the federal Wiretap Law (the Omnibus Crime Control & Safe Streets Act

of 1968 (Title III) 18 U.S.C. §§ 2510 *et seq.*), the Pennsylvania Wiretap Law

(Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. §§

5701 *et seq.*), and the Maryland Wiretap Law (Maryland Wiretapping and Electronic

Surveillance Act, Md. Cts. & Jud. Pro. §§ 10-401 *et seq.*). Plaintiffs also claim that

Mr. O'Donnell's participation in the Teams meeting amounts to an invasion of the

Plaintiffs' privacy.

Relevant to Mr. O'Donnell's motion, the following facts are undisputed:

- The plaintiff congregations are either associations or non-profit corporations, not individuals. Def's SUF ¶¶ 1-2.

- Plaintiffs allege a single unlawful interception of a wire or electronic communication occurred when O'Donnell attended a Microsoft Teams meeting that took place on February 16, 2023. Def's SUF ¶ 4.

- O'Donnell attended the Microsoft Teams meeting using a computer while located at his home in Maryland. Def's SUF ¶ 3.

- On or about February 19, 2023, O'Donnell participated in an interview that was recorded and posted on YouTube, which Plaintiffs contend was an

3

unlawful disclosure of information gained at the Microsoft Teams meeting of
February 16, 2023. Def's SUF ¶ 5.

- On or about the same day that the YouTube interview was posted on Reddit,
  O'Donnell posted a comment on a Reddit thread that Plaintiffs allege was a
  second unlawful disclosure of information gained at the Microsoft Teams
  meeting of February 16, 2023. Def's SUF ¶ 6.

## III. Legal Standard

Federal Rule of Civil Procedure 56(a) "requires a district court to enter judgment
on a claim or defense if there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." *Dupree v. Younger*, 598 U.S. 729,
731 (2023) (cleaned up). Material facts are those which "might affect the outcome of
the suit under the governing law[,]" and a dispute over such facts is genuine if "a
fair-minded jury could return a verdict for the [nonmovant] on the evidence
presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986). "[F]acts
must be viewed in the light most favorable to the nonmoving party *only if* there
is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007)
(emphasis added). Summary judgment operates pursuant to a burden-shifting
framework. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
586-87 (1986). Once the movant cites to materials in the record demonstrating the
absence of a genuine dispute of material fact, the burden shifts to the nonmovant who
then "must come forward with specific facts showing that there is a genuine issue for
trial." *Id.* at 587 (quoting FED. R. CIV. P. 56(e) (cleaned up)). However, judgment
must be entered against a nonmovant whose evidence "is merely colorable, or is not

significantly probative[.]" *Anderson*, 477 U.S. at 252 (citations omitted). So too is the case when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

IV.    Argument

A. Because Plaintiffs Are Not Living Individuals, Plaintiffs Cannot Bring Invasion of Privacy Claims under Pennsylvania Law, and Count IV of the Amended Complaint Should Therefore Be Dismissed

In Count IV of the Amended Complaint, Plaintiff Congregations, which include nine unincorporated associations and one nonprofit corporation, allege that Defendant Mark O'Donnell committed a tortious invasion of their privacy in violation of the common law. Am. Compl. ¶¶ 127-133, ECF 21. However, as a matter of hornbook common law: "[A]n action for invasion of privacy can be maintained only by a living individual whose privacy is invaded." Restatement (Second) of Torts § 652I (1977); *see also id.* cmt. c ("A corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E."). Because Plaintiffs are not individuals, they do not possess a personal right of privacy that can be tortiously injured, and Count IV of the Amended Complaint should therefore be dismissed.

The right to privacy is a personal right that may be enforced only by the individual injured by the intrusion. "Because the right of privacy directly involves injury to human dignity and feelings, the clear majority view is that nonhumans, such as corporations, possess no right to privacy." J. Thomas McCarthy, *The Rights*

*of Publicity and Privacy*, § 4:43 (2d ed) (collecting cases from numerous states); *see also FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011) ("[T]reatises in print around the time that Congress drafted the exemptions at hand reflect the understanding that the specific concept of 'personal privacy,' at least as a matter of common law, did not apply to corporations."). Pennsylvania courts agree and refuse to recognize that a corporation or unincorporated association has a right to privacy that can be tortiously injured. *Teri Woods Pub., L.L.C. v. Williams*, CIV.A. 12-04854, 2013 WL 1500880, at *7 (E.D. Pa. Apr. 12, 2013) ("With regard to the tort of invasion of privacy, the Pennsylvania Supreme Court has adopted the relevant portions of the Second Restatement of Torts. … Consequently, Plaintiff Publishing, a limited liability company, is barred from raising an invasion of privacy claim.") (citing *Vogel v. W. T. Grant Co.*, 327 A.2d 133, 135-36 (Pa. 1974) and Restatement (Second) of Torts § 652I cmt. c); *Nabisco, Inc. v. Ellison*, CIV. A. 94-1722, 1994 WL 622136, at *5 (E.D. Pa. Nov. 8, 1994) ("So although the supreme court has not explicitly applied § 652I and comment c, it is apparent that by adopting section 652 in its entirety and from subsequent Pennsylvania case law, the common law right of privacy is not extended to corporations."); *see also Arnold v. Pennsylvania Dep't of Transp.*, 477 F.3d 105, 111 (3d Cir. 2007) ("The District Court correctly found that, as an entity, Baker "clearly ha[d] no privacy interest" capable of protection at stake here.") (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) and Restatement (Second) of Torts § 652I, cmt. c); *Butler Area Sch. Dist. v. Pennsylvanians for Union Reform*, 172 A.3d 1173, 1184–85 (Pa. Commw. Ct. 2017) ("The constitutional right to informational

privacy only inures to individuals. Stated differently, individuals, as distinct from 'persons' (which may include corporations), may assert a privacy interest under Article I, Section 1."). "Corporations can claim no equality with individuals in the enjoyment of a right to privacy." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

There is no factual dispute that Plaintiff congregations are incorporated or unincorporated non-profit entities. Def's SUF ¶ 1. They are not individuals. Def's SUF ¶ 2. They therefore have no right to privacy for the violation of which they can allege a cause of action against Defendant O'Donnell, and Count IV must therefore be dismissed.

### B. Because the Alleged Interception Did Not Take Place in Pennsylvania, the Pennsylvania Wiretap Act Does Not Apply, and Count II of the Amended Complaint Should Therefore Be Dismissed

In Count II of the Amended Complaint, Plaintiff Congregations allege that Defendant O'Donnell violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") by intercepting the Teams meeting from his home in Maryland. However, "Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022) (citing *Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. Ct. 2000). Because there is no dispute that Defendant O'Donnell was not in Pennsylvania when he used his computer to allegedly intercept the Teams meeting, but was instead at his home in Maryland, Plaintiffs' claim under WESCA fails and should be dismissed.

In *Larrison v. Larrison*, the Pennsylvania Superior Court addressed whether WESCA applied to a defendant located in New York who recorded a telephone call with a plaintiff in Pennsylvania. 750 A.2d at 898. As the Third Circuit explained in *Popa*, the Superior Court ultimately held that "[w]hen a person in New York, for example, tape records a phone call with someone in Pennsylvania, the WESCA does not apply because the Commonwealth has 'no power to control the activities that occur within a sister state.'" *Popa*, 52 F.4th at 130 (quoting *Larrison*, 750 A.2d at 898). In *Popa*, the Third Circuit applied *Larrison* in the context of electronic interceptions, holding that "an interception occurs where there is an act taken to gain possession of communications using a device." *Id.* Here, there is no dispute that Defendant O'Donnell was located in Maryland when he took any act "to gain possession of communications using a device."[2] Def's SUF ¶ 3. WESCA therefore does not apply, and Count II of Plaintiffs' Amended Complaint should be dismissed.

---

[2] It is worth noting that the Court in *Popa* addresses a more complex fact pattern involving interceptions of browsing history using electronic cookies. The alleged interceptor there was itself a software company that used code "fully rendered and loaded in" plaintiff's web browser in order to reroute plaintiff's information to its servers. *Id.* at 131 ("Thus when the code—the rerouting device at issue—told Popa's browser to send communications to NaviStone and those electronic signals were routed to NaviStone's servers, an interception occurred."). Mark O'Donnell is not a software company, and the device he allegedly used to intercept the communications was his personal computer in Maryland. Def's SUF ¶ 3. The meeting itself was conducted on Teams, a Microsoft video conferencing product. Def's SUF ¶ 4. The Court therefore, need not get into the weeds of internet routing protocol to determine the location where "an act [was] taken to gain possession of communications using a device.'" *Popa*, 52 F.4th at 130. Rather, the facts of *Larrison* apply straightforwardly here, even if the device was a computer rather than a telephone.

Even if the question of where precisely the physical servers were located that Defendant O'Donnell's computer communicated with in order to attend the meeting was relevant to this determination, Plaintiffs have not adduced any evidence in the

## C. The Court Should Bar Plaintiffs' Requests for Damages in Excess of the Relevant Statutory Provisions

The federal, Pennsylvania, and Maryland wiretapping statutes at issue prohibit three discrete categories of conduct related to electronic communications: their "interception," their "disclosure," or their "use." 18 U.S.C. § 2511(1); 18 Pa.C.S. § 5703; Md. Cts. & Jud. Pro. § 10-402(a)(1)-(3). The Pennsylvania and Maryland statutes include statutory or liquidated damages provisions for private actions of "of $100 a day for each day of violation, or $1,000, whichever is higher." 18 Pa.C.S. § 5725(a)(1); Md. Cts. & Jud. Pro. § 10-410(a)(1). The federal statute contains a similar provision, although discretionary, permitting an award of "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2)(B).[3]

In their Amended Complaint, Plaintiffs allege that Mr. O'Donnell's violated the wiretapping statutes because he (1) intercepted their electronic communications by attending the Teams meeting, (2) disclosed or used the contents of that meeting during a single interview published to YouTube, and (3) disclosed or used the contents of that meeting in a comment in a thread on Reddit. Def's SUF ¶¶ 4-6; *see also* Am.

---

record to support an argument that such servers were located in Pennsylvania. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

[3] Statutory damages are permitted in these statutes as an alternative to actual damages. However, there is no evidence in the record to suggest the Plaintiffs suffered any actual damages caused by the alleged interception or disclosures.

Compl. ¶¶ 7, 53-61, 86, 103, 119. Plaintiffs have thus alleged three discrete violations of the statutes that occurred on, at most, three discrete days. *Id.* Even assuming that each of the ten congregations is entitled to collect separate damages from Mr. O'Donnell, Plaintiffs' allegations at most give rise to three "days" of violations and therefore, at most, $300 per Plaintiff ($3,000 collectively). Applying the "whichever is higher" provisions results in a maximum of $1,000 per Plaintiff under the Pennsylvania and Maryland statutes ($10,000 collectively per claim), and $10,000 per Plaintiff under the federal statute ($100,000 collectively).[4]

Despite this, Plaintiffs demand over $33,700 per Plaintiff per claim ($337,000 collectively per claim), on the basis that every day that the YouTube video was

---

[4] Notably, the statutory damages under the federal statute are discretionary. "Whether to award damages under § 2520(c)(2) is committed to the sound discretion of the Court. … The question then is whether to award no damages or $10,000." *DirecTV, Inc. v. Walsh*, 540 F.Supp.2d 553, 561 (M.D. Pa. 2008) (Vanaskie, J.) (citing *DirecTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999); *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996); *DirecTV, Inc. v. Neznak*, 371 F.Supp.2d 130, 134 (D.Conn. 2005)). The reason it is discretionary derives from the history of the wiretap statute, where "we have the 'crucial fact' that Congress changed the verb from 'shall' to 'may' in amending the statute in 1986." *Reynolds*, 93 F.3d at 435.

At trial, in determining whether to exercise such discretion and award the federal statutory damages, the jury will be required to consider factors such as whether the defendant "significantly profited from his violation," whether the plaintiffs can "quantify how [they were] harmed financially" by the interception and disclosure, whether the plaintiffs are receiving damages under other statutes, and whether the plaintiffs would be entitled to attorneys' fees. *Walsh*, 540 F.Supp.2d at 561. Other courts have assessed similar factors in declining to award the statutory damages. *See, e.g., DirecTV, Inc. v. Neznak,* 371 F.Supp.2d 130 (D. Conn. 2005); *DirecTV, Inc. v. Perrier*, No. 03–CV–400S, 2004 WL 941641, at *4 (W.D.N.Y., Mar. 15, 2004); *DirecTV, Inc. v. Kaas*, 294 F.Supp.2d 1044, 1049 (N.D. Iowa 2003); *Reynolds v. Spears,* 857 F.Supp. 1341 (W.D. Ark. 1994), *aff'd,* 93 F.3d 428 (8th Cir. 1996).

online—a video posted to an account over which Mr. O'Donnell had no control—constituted a "day of violation" of the statute for which Mr. O'Donnell is responsible for statutory damages. Am. Compl. ¶¶ 92, 108, 124. Plaintiffs do not identify how Mr. O'Donnell violated the statutes at issue by mere fact that the video was available on YouTube during those times.

Plaintiffs' argument that the length of the YouTube video's online presence is the measure of "day[s] of violation" under the statute, presumably as some sort of "continuing disclosure,"[5] is without precedent, in contradiction to the plain language of the statute, and creates an absurd result. As discussed above, the statutes identify "interception" of communications and the "disclosure" of those intercepted communications as discrete violations of the statute and premise statutory damages on "each day of violation." While the statute does not specifically define "disclosure," the dictionary definition recognizes that disclosure is "[t]he act or process of making known something that was previously unknown; a revelation of facts." Black's Law Dictionary (12th ed. 2024). Once the "act or process of making known" is complete, it is no longer a disclosure. And, perhaps more to the point, Mr. O'Donnell is not responsible under the wiretap statutes for someone else resharing information that he allegedly disclosed. To permit such a reading would effectively turn the statute into an infinite-liability statute: if a party disclosed an intercepted communication to a journalist who published that information in an interview (or a YouTube video) and

---

[5] *See* Pltfs' Resps. to Def's SUF ¶¶ 5-6 ("By way of further response, the Amended Complaint alleges that the disclosure of information was a continuing one.").

that information remained out in the world through that publication or interview going forward, there is no meaningful limit on the "each day of violation" limit set by the respective legislature.

The Third Circuit has interpreted "disclosure," at least as used elsewhere in the statute, to singular events initiated by the alleged violator, not to subsequent disclosures or uses of the information by others. *See United States v. Iannelli*, 477 F.2d 999 (3d Cir. 1973), *aff'd*, 420 U.S. 770 (1975) (noting that disclosures that occurred "when the communications were disclosed to an agent of the Intelligence Division, Internal Revenue Service, and to an agent of the audit branch of the same service" were not suppressible under 18 U.S.C. § 2518(10) and that "[a] civil remedy applies to unlawful disclosures"); *see also Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1349–50 (Fed. Cir. 2001) ("In other words, the term 'disclosure' means to reveal something that was hidden and not known. It is also quite significant that Congress in the WPA did not use a word with a broader connotation such as 'report' or 'state.'") (interpreting the Whistleblower Protection Act of 1989, since superseded); *Hutchins v. Clarke*, 07-C-526, 2009 WL 10710791, at *4 (E.D. Wis. May 15, 2009) ("the issue is whether Sheriff Clarke made known something that was previously unknown, whatever the manner of communication employed by him."); *cf. Monico v. City of Cornelius*, 13-CV-02129-HZ, 2015 WL 1538786, at *19 (D. Or. Apr. 6, 2015) ("The conduct regulated is the actual disclosure, not what happens once the information is disclosed.") (regarding continuing tort doctrine for statute of limitations purposes).

12

This understanding of "disclosure" does not in any way impair the "day of violation" language of the statue. Indeed, as courts interpreting the statutes at issue in this case have recognized, the "day of violation" language is particularly relevant in a wiretapping statute where an unauthorized interception takes place over the course of days or weeks. *Standiford v. Standiford*, 598 A.2d 495, 502-03 (Md. App. 1991) (upholding jury verdict based on 125 days of wiretaps operating to intercept communications). The use of "day" rather than "instance" makes particular sense in the case of interceptions, where a recording device may be setup to record continuously over time, thus making measurement of the seriousness of that interception a time measurement rather than an event measurement.

To be clear, Mr. O'Donnell will contest liability on each of these claims. Nonetheless, he is entitled to partial summary judgment precluding Plaintiff from seeking any damages apart from the allowable statutory damages.

## V.   Conclusion

Wherefore, Defendant Mark O'Donnell respectfully requests that (1) the Court dismiss Counts II and IV of the Amended Complaint, and (2) hold that Plaintiffs may not seek damages at trial in excess of those authorized by the statutes at issue. A proposed order is attached to Defendant's motion.

Dated: June 30, 2025                    Respectfully Submitted,

                                        */s/ Mary Catherine Roper*
                                        Mary Catherine Roper
                                        John J. Grogan
                                        David Nagdeman
                                        LANGER GROGAN & DIVER PC

1717 Arch St., Ste 4020
Philadelphia, PA 19103
(215) 320-5660
mroper@langergrogan.com
jgrogan@langergrogan.com
dnagdeman@langergrogan.com

*Attorneys for Defendant*