UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Burlholme Congregation of Jehovah's Witnesses, *et al.*,<br>   *Plaintiffs,*<br><br>v.<br><br>Mark O'Donnell,<br>   *Defendant.* | Civil Action No. 2:24-cv-304 |

## DEFENDANT MARK O'DONNELL'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Consent of all parties is an absolute defense to liability under both the Maryland and Pennsylvania Wiretap Laws, and under both those statutes, courts have consistently held that such consent may be implied. Here, Defendant Mark O'Donnell was invited to the Microsoft Teams meeting by another participant; he arrived before any other participant; he was identified in the video conferencing software by his Maryland-based phone number; and he was visible to all other participants from the outset of the meeting until its conclusion. From these facts, Plaintiffs knew or should have known that someone who wasn't an elder at a Pennsylvania Jehovah's Witness congregation was on the line and listening. Despite this knowledge, Plaintiffs and their attorneys carried out the meeting. With all inferences viewed in the light most favorable to the Defendant, Plaintiffs' knowledge and conduct could well be found by a rational trier of fact to constitute implied consent

and thereby defeat Plaintiffs' wiretap claims. Plaintiffs' motion for summary judgment should therefore be denied.[1]

## II. Argument

### A. There Is a Genuine Dispute of Material Fact as to Whether Plaintiff Congregations Gave Their Implied Consent to Defendant Mark O'Donnell's Presence in the Microsoft Teams Meeting

Both the Maryland and Pennsylvania Wiretap Laws provide an exception to liability where "where all of the parties to the communication have given prior consent to [the] interception" Md. Cts. & Jud. Pro. § 10-402(c)(3); 18 Pa.C.S. § 5704(4). There is sufficient evidence in the record that a reasonable juror could find that Mr. O'Donnell's presence was known or should have been known to all other participants prior to the interception, and that the conduct of all other participants in carrying on with the meeting despite that knowledge constitutes implied consent to his presence. Summary judgment on both of the state law claims should therefore be denied because there is a genuine dispute of material fact as to whether the interception was made without consent.

---

[1] Defendant Mark O'Donnell, in his cross motion for summary judgment, raises a jurisdictional defense to the Pennsylvania Wiretap Law claim which, if he prevails on in his motion, would be a complete defense to liability under that law. Def's MPSJ Br at 7–8, ECF 81-1. He also requests that that Court strike Plaintiffs' damages request in excess of the statutory provisions under both the Pennsylvania and Maryland Wiretap Laws. Def's MPSJ Br. at 9–13. Defendant will address both these issues concisely in this brief. However, in light of his own burden of persuasion in his affirmative motion and for the convenience of the Court, Defendant will reserve the more extensive legal arguments on these issues for his affirmative motion and the associated responses and replies where the issues will be more fully joined.

In Pennsylvania, "'prior consent' can be demonstrated when the person being recorded knew or should have known, that the conversation was being recorded. This standard is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded." *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (cleaned up). This follows the basic common law of "implied consent." "[I]implied consent may be manifested when a person takes no action, indicating an apparent willingness for the conduct to occur." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 148 (3d Cir. 1998) (citing Restatement (Second) Torts § 892 cmt. b & c). "Silence and inaction may manifest consent where a reasonable person would speak if he objected." Prosser and Keaton on Torts § 18 at 113 (5th ed. 1984). As former Chief Judge Castille of the Pennsylvania Supreme Court noted, the fact that "prior" is used in the statutory text does not mean that the statute requires express or explicit consent: "Section 5704(4) requires the 'prior consent' to interception of all parties to the communication but does not specify that the consent must be explicit in response to explicit disclosure that the interception is in progress." *Com. v. Arrington,* 86 A.3d 831, 859–60 (Pa. 2014) (Castille, C.J., concurring). The Pennsylvania Superior Court has, in this line, repeatedly held that persisting in a communication despite knowing that a communication is likely to be intercepted is sufficient to meet the "prior consent" requirement. *See Com. v. Proetto,* 771 A.2d 823, 830 (Pa. Super. Ct. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003) (sending emails or chat-room communications); *Com. v. De Marco*, 578 A.2d 942 (Pa. Super. Ct. 1990) (leaving voicemail message).

3

Maryland courts agree that the "prior consent" provision of their wiretap law permits implied consent and exists when parties know that the conversation is being intercepted but continue the conversation despite this knowledge. For instance, the Maryland Supreme Court has stated that "the General Assembly sought to protect those who do not know their conversation is being electronically intercepted." *Agnew v. State*, 197 A.3d 27, 34 (Md. 2018) (quoting *State v. Maddox*, 517 A.2d 370, 372 (Md. App. 1986)). Maryland appellate courts have, since the *Agnew* decision, repeatedly held that "[c]onsent may be both express and implied and implied consent to a recording of a conversation is sufficient." *Gousse v. State*, No. 931, Sept. Term 2023, 2024 WL 4688914, at *11 (Md. Ct. Spec. App. Nov. 6, 2024) (non-precedential) (knowledge of recording sufficient to show implied consent); *accord Houston v. Houston*, No. 125, Sept. Term 2024, 2024 WL 4449686, at *5 (Md. Ct. Spec. App. Oct. 9, 2024) (non-precedential) ("An individual may consent to an interception either expressly or implicitly.") (citing *Agnew*, 197 A.3d at 31).

Plaintiffs' legal interpretation of "prior consent," to require an affirmative request and approval prior to the commencement of an interception would impose express consent requirements on the statutes that do not exist. This would be contrary to both Maryland and Pennsylvania opinions holding that implied consent is sufficient, as Plaintiffs acknowledge. *See* Pltfs' MSJ Br. at 11 (quoting *Byrd*) and 19 (citing *Agnew*), ECF 82.

Plaintiffs' factual arguments, on the other hand, are a matter for the jury. Plaintiffs argue that it would be "unreasonable" to conclude that the participants of

this Teams meeting consented to the interception based on a series of factual assertions liberally framed in their favor. Pltfs' MSJ Br. at 11, 19.² As an initial

---

² A number of these facts are plainly irrelevant or only relevant to Plaintiffs' legal argument that express consent is required by the statute. For example, Plaintiffs argue that Defendant concedes that "he did not have the permission of the body of elders of any of the plaintiff congregations to attend the Teams meeting." Pltfs' MSJ Br at 9, 18. First, this contorts the record. Mr. O'Donnell conceded at his deposition, per the Plaintiffs' own Statement of Undisputed Facts, that "O'Donnell did not *secure* the consent of the body of elders of any of the plaintiff congregations *before joining the Teams meeting.*" Pltfs' SUF ¶ 36, ECF 82-1 (emphasis added). This "concession" is thus only relevant to the extent that consent must be expressly requested and obtained. Indeed, as Defendant points out *infra*, Mr. O'Donnell joined the meeting prior to any other participants, and it was their knowledge of his presence *when they logged on* that Defendant argues predicates implied consent to the interception.

Plaintiffs also repeatedly refer to the supposedly confidential nature of the meeting, Mr. O'Donnell's knowledge of the same, and various characterizations of Mr. O'Donnell's conduct as "eavesdropping" or going "undercover" suggested by Plaintiffs' attorneys at Mr. O'Donnell's deposition. Pltfs' MSJ Br. at 11, 16, 18–19. None of these facts are relevant here, or if they are, must be construed in favor of Defendant where a reasonable person participating in such a confidential meeting (particularly an attorney) would want to know who else was involved and only move forward if they were assured that no one uninvited was in fact on the line.

Finally, Plaintiffs rely on a citation to the deposition of Joshua Voss, the attorney who organized the call, to argue that "the moment that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ any implicit consent to the presence of intruders like Mr. O'Donnell (as well as any subsequent disclosure) would have been revoked." Pltfs' MSJ Br. at 11, 19, ECF 82. This assertion was not included in Plaintiffs' Statement of Undisputed Facts, so Defendant did not have a previous opportunity to point out that on the page prior to that cited by Plaintiffs, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Joint Ex. N, Voss Dep. at 46:4–11, ECF 82-14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Voss Dep. at 46:4–7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Joint Ex. F, Lim Dep. 42, ECF 82-6; Joint Ex. K, Moyer Dep. 49, ECF 82-11; Joint Ex. L, Moore Dep. 62, ECF 82-1, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Joint Ex. G, Campbell Dep. 43–44, ECF 82-7; Joint Ex. H, Snell Dep. 36–37, ECF 82-

5

matter, this turns the summary judgment standard of review on its head, which instead requires that "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And more to the point, "[o]f course, a finding as to a [party's] knowledge is a fact-specific inquiry, and we cannot prescribe a specific formula as to what conduct or evidence is sufficient to infer knowledge." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 432 (3d Cir. 2013); *see also Zurich Am. Ins. Co. v. A.T. Chadwick Co., Inc.*, 20-cv-2180, 2022 WL 425890, at *3 (E.D. Pa. Feb. 11, 2022) ("The determination of what constitutes reasonable conduct is highly fact-specific and calls upon the unique ability of the jury to assess conduct in context."). The facts in the record, with all inferences drawn in favor of Defendant O'Donnell, are more than sufficient for a rational juror to find that Plaintiffs knew or should have known about Mr. O'Donnell's presence on the call and that by continuing the call despite this knowledge they consented to his presence.

As set forth in Plaintiffs' Statement of Undisputed Facts, Mr. "O'Donnell joined the Teams meeting approximately thirty minutes before the meeting began … ." Pltfs' SUF ¶ 38. He was identified in the meeting by his phone number. Pltfs' SUF ¶ 39. The area code for that phone number was "410," a Maryland and therefore non-

---

8; Joint Ex. I, Shepherd Dep. 35, ECF 82-9; Joint Ex. J, Mansfield Dep. 32–33, ECF 82-10.

Joint Ex. E, Hall Dep. at 40:21–41:1, ECF 82-5.

Pennsylvania area code. Joint Ex. N-1 (Microsoft TEAMS participant list showing first participant as "14102583900"), ECF 82-14; Am. Compl. ¶ 65, ECF 21.[3] All the coordinators whose depositions were taken attended the meeting through Microsoft Teams and were able to see other participants and their identification by name or phone number in the software's video interface. Def's Resp. to Pltf's SUF ¶¶ 33, 35, 42, ECF 82-1. All participants were aware of how video conferencing software functioned, because the congregations used such software to conduct meetings during the COVID-19 pandemic.[4] All participants logged in after Mr. O'Donnell. Joint Ex. N-1; Pltfs' SUF ¶ 38. ███████████████████████████████████████

███████████████████████████████████████[5] ███████

███████████████████████ Pltfs' SUF ¶¶ 33, 38. As Joshua Voss, one of the attorney-organizers of the meeting explained, ███████████████████████

███████████ Voss Dep. 42:23–25; ███████████████████████

███████████████████████████████████████

---

[3] Indeed, the fact that there was a Maryland number among the participants was the first thing that the attorney leading the call noted when he looked at the attendance list. Voss Dep. at 57:11–16 ("Q. And what did you notice about the participation report? A. That there was a 410 area code number that had been on there for a long period of time, and I think I Googled it and figured out who this was.").

[4] Voss Dep. 52; Hall Dep. 38–39; Lim Dep. 41; Campbell Dep. 43; Snell Dep. 36; Shepherd Dep. 35–36; Moyer Dep. 30–31; Moore Dep. 63; Joint Ex. M, Donahue Dep. 32–33, ECF 82-13.

[5] Voss Dep. 43–44; Hall Dep. 41; Lim Dep. 42–44; Snell Dep. 36–37; Shepherd Dep. 36–37; Mansfield Dep. 34–35; Moyer Dep. 63–64; Moore Dep. 63–64; Donahue Dep. 46–47. *But see* Campbell 45–46 (███████████████████████

███████████████).

███████, Voss Dep. 43:1–5; ███████████████████████████████████ Voss Dep. 43:6–9.[6]

These facts demonstrate that all the participants in the Teams Meeting, including all participants representing Plaintiffs here, knew or should have known that the Teams Meeting was being intercepted by "14102583900," *i.e.,* Mr. O'Donnell, and yet continued the meeting despite this knowledge. Under both Maryland and Pennsylvania law, this is sufficient to establish implied prior consent to the interception and defeat liability. And, indeed, many of Plaintiffs' asserted facts in their favor are aimed directly at challenging whether a reasonable person would or should have known that the meeting was being intercepted.[7] For instance, Plaintiffs' preemptive efforts to counter Defendant's consent argument by supplementing the record with form declarations from all of the coordinators only reinforces the genuineness of this dispute. Indeed, all the coordinators concede that they did not

---

[6] Plaintiffs attempt to characterize Defendant's implied consent argument as a negligence argument, that Plaintiffs' elder agents and their attorney agents were simply negligent in how they invited participants and how they confirmed attendance. Pltfs' MSJ Br. at 12–13. While it may be true that Plaintiffs and their attorneys were negligent, that does not make such evidence irrelevant to the legal issue of implied consent. Indeed, in a supposedly confidential meeting that included as many as 57 participants, Voss Dep. 49:4–6, Mr. Voss made absolutely no attempt to verify the identities of any of the participants, instead simply taking roll call by confirming that "there [were] representatives of each of the 11 congregations on the phone … or on the Teams meeting" by calling the congregation's name and asking "people to either physically stick their hand up … or put the digital hand up" using the Teams' software. Voss Dep. 41:1–42:24.

[7] *See, e.g.,* Pltfs' MSJ Br. at 18 (describing the video interface, the coordinators' prior knowledge about who Mark O'Donnell was, Mr. O'Donnell's use of his phone number to identify himself and lack of video transmission, the number of people in the meeting, and Mr. O'Donnell's conduct at the meeting).

know "Mr. O'Donnell prior to the meeting, did not know his phone number, … and if they had seen [his phone number, they] would not have known who it belonged to." Pltfs' SUF ¶ 42 (summarizing the form declarations at Joint Exs. O–W, ECF 82-15–82-23). A reasonable person, who saw an unknown number in a purportedly confidential and private meeting, would speak up, demand that person identify themselves and, if they didn't belong there, ask them to leave. "Silence and inaction may manifest consent where a reasonable person would speak if he objected." *See* Prosser and Keaton on Torts § 18 at 113.

Plaintiffs argue that it would be "unreasonable" to expect each of the elders who attended the Teams meeting to have verified, at the start of the meeting, that everyone listed as an attendee was someone they expected to be there. Pltfs' MSJ Br. at 11. At the outset, such determinations of reasonability are the provenance of the jury. But even if it were unreasonable—and Defendant does not concede it is—to expect that each of the Plaintiff congregations' elder agents who attended the meeting would check the identity of each attendee, it is not unreasonable to expect that the attorney agents leading the call would do so.[8] But they did not—and, indeed, never have. Voss Dep. 52:9–12 (does not know identity of other meeting attendees who are identified only by telephone number). As one of the coordinators explained during his deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "Because of the sensitivities of the nature of what's being discussed, I can understand why such

---

[8] The Plaintiffs bringing this claim attended the meeting through their agents.

9

provisions or steps would be taken." Hall Dep. 39–44; 40:21–41:1. Perhaps more critically to the question of implied consent, based on the fact that it was within the scope of the attorneys' agency authority to organize and administrate the meeting, a juror may reasonably conclude that the attorney agents also had the authority to consent to Mr. O'Donnell's participation on behalf of all Plaintiffs. Pltfs' SUF ¶¶ 27, 30, 32.

Thus, on the record before the Court, drawing all inferences in favor of Defendant O'Donnell, there are genuine disputes of fact on which a reasonable juror could find for the Defendant, as to: (1) whether the participants knew or should have known that Mr. O'Donnell was present on the call; and, (2) whether the participants manifested consent to Mr. O'Donnell's presence when they continued the meeting despite knowing that he was there. These factual disputes are genuine because "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020), *amended,* 979 F.3d 192 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)). And they are material because resolution in favor of Defendant Mark O' Donnell will "affect the outcome of the suit under the governing law." *Id.* Summary judgment on the state wiretapping claims in favor of Plaintiffs is therefore foreclosed.

### B. The Pennsylvania Wiretap Law Does Not Apply to an Interception That Occurred in Maryland

Defendant has raised the jurisdictional scope of the Pennsylvania Wiretap Law in his Motion for Partial Summary Judgment. Def's MPSJ Br. at 7–8. For the convenience of the Court, Defendant incorporates those arguments to the extent

necessary here, but as that defense will be resolved in Defendant's affirmative motion, Defendant will not create a parallel set of arguments on the matter in this brief. Suffice to say, Plaintiffs are not entitled to summary judgment on the Pennsylvania Wiretap Law claim because that law does not reach interceptions that take place using devices located in Maryland.[9]

### C. Plaintiffs' Request for Damages in Excess of the Statutes Should Be Stricken

Defendant has raised the scope of statutory damages permitted under all three of the wiretap statutes at issue in his Motion for Partial Summary Judgment. Def's MPSJ Br. at 9–13. Defendant incorporates those arguments to the extent necessary here, but as that defense will be resolved in Defendant's affirmative motion, Defendant will not create a parallel set of arguments in this brief. Suffice to say, even were liability established, Plaintiffs have only alleged three violations of the statute that occurred on, at most, three discrete days. Def's SUF ¶¶ 4–6, ECF 81-3. They are therefore limited to the statutory maximum of $1,000 per Plaintiff under the

---

[9] As will be addressed further in Defendant's reply brief related to his partial summary judgment motion—and already anticipated in footnote 2 on page 8 to Defendant's MPSJ Brief—Plaintiffs misunderstand the Third Circuit's holding in *Popa*, that "an interception occurs where there is an act taken to gain possession of communications using a device." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022). In *Popa* the "device" was code installed locally on the plaintiff's browser which then "re-routed" information from plaintiff's computer to the defendant. *Id.* at 131 ("So NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers. And that was at Popa's browser, not where the signals were received at NaviStone's servers."). Defendant O'Donnell is alleged to have used his personal computer to enter a meeting hosted online by a national software provider from his home in Maryland. Pltfs' SUF ¶ 43. He is not alleged to have hacked into Plaintiffs' Pennsylvania-based computers or installed malicious code in their browsers as in *Popa*.

Maryland and Pennsylvania statutes. Plaintiffs have cited no law or even made a serious factual argument to the contrary.[10]

### III. Conclusion

Wherefore, Defendant Mark O'Donnell respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment.

Dated: July 14, 2025

Respectfully Submitted,

*/s/ Mary Catherine Roper*
Mary Catherine Roper
John J. Grogan
David Nagdeman
LANGER GROGAN & DIVER PC
1717 Arch St., Ste 4020
Philadelphia, PA 19103
(215) 320-5660
mroper@langergrogan.com
jgrogan@langergrogan.com
dnagdeman@langergrogan.com

*Attorneys for Defendant*

---

[10] Defendant's MPSJ Brief explains why Plaintiffs' argument for 357 days of "disclosure" has no support in the statutes upon which Plaintiff relies. Even if, however, there were such a thing under the law, Mr. O'Donnell would have another "consent" defense for factual resolution by the jury, since Plaintiffs were aware of the YouTube video by the end of February 2023, yet none of the Plaintiffs' agents made any effort to have the YouTube video taken down or, indeed, to ask Mr. O'Donnell not to disseminate further what he learned at the meeting. *See, e.g.,* Voss Dep. at 62:18–63:9; 63:19–64:9.