IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BURHOLME CONGREGATION OF JEHOVAH'S WITNESSES**, *et al.*, | : <br> : <br> : Case No: 2:24-cv-0304-MRP <br> : |
| *Plaintiffs,* | : <br> : |
| v. | : <br> : |
| **MARK O'DONNELL** | : <br> : |
| *Defendant.* | : <br> : |

**BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Burholme Congregation of Jehovah's Witnesses, *et al.*, pursuant to F.R.C.P. 56, respectfully submit this brief in opposition to Defendant Mark O'Donnell's motion for partial summary judgment. For the reasons set forth below, this motion should be denied.

**A.  Count IV Of The Amended Complaint May Be Dismissed.**

Without admission, the plaintiffs have no objection to the dismissal of Count IV of their Amended Complaint alleging Invasion of Privacy (Intrusion Upon Seclusion).

**B.  The Court Should Deny The Defendant's Motion For Summary Judgment On Count II Of The Amended Complaint (Pennsylvania Wiretap Act).**

Plaintiffs incorporate their discussion of this issue in their brief in support of their motion for summary judgment on Count II (Pennsylvania Wiretap Act claim). ECF No. 82 at 8.

The Pennsylvania Superior Court's decision in *Larrison v. Larrison*, 750 A.2d 895 (Pa.Super. 2000), a child custody case, is distinguishable from the present case. In *Larrison*, a wife, located in Pennsylvania, placed a telephone call to her husband, located in New York, and used a continuous string of hostile and obscene comments. Unbeknownst to the wife, the husband recorded the phone call in New York and introduced it during the custody hearing. The

1

Pennsylvania Superior Court was therefore faced with a conflict of laws question – specifically whether Pennsylvania law (which prohibits such recordings without the consent of all parties) or New York law (which allows such recordings with the consent of a single party) should apply. In that case, under the unique facts presented, the court held that New York law should apply because "New York possessed a greater interest in allowing its citizens to record telephone conversations lawfully with only the consent of the sender or receiver" than Pennsylvania did "in protecting its citizens from having telephone conversations recorded without proper consent. . . . " *Id*. at 898.

The present case is significantly different. First, unlike *Larrison*, this case is not simply an "intercept" case but also involves "disclosures" that took place in Pennsylvania *via* YouTube. Second, there is no conflict of laws in this case because Pennsylvania and Maryland both prohibit the interception of communications without the consent of all parties. Third, *Larrison* did not address the seminal question, present in this case, involving Pennsylvania's statutory definition of the term "intercept" and whether Mr. O'Donnell's "act of acquiring" of the contents of the intercepted Teams meeting organized between parties in Pennsylvania is punishable under Pennsylvania law. In other words, while the question in *Larrison* was *what* state law to apply (Pennsylvania or New York), the question in this case is how to *interpret* Pennsylvania law for purposes of the plaintiffs' Pennsylvania Wiretap Act claim. Fourth, Pennsylvania's interest in ensuring that its citizens are protected from having their communications unlawfully intercepted is at least as important as Maryland's, and neither State has an interest in protecting the type of conduct that Mr. O'Donnell's engaged in. Therefore, *Larrison* is distinguishable.

Mr. O'Donnell makes much of language in *Larrison* that the Pennsylvania courts "have no power to control the activities that occur within a sister state." *Id*. at 898. Mr. O'Donnell also cites to the Third Circuit's interpretation of *Larrison* in *Popa v. Harriet Carter Gifts, Inc*., 52 F.4th

121 (3d. Cir. 2022), that the Pennsylvania courts "have declined to extend the [Pennsylvania Wiretap Act] to cover conduct occurring wholly outside the Commonwealth." *Id*. at 130. However, *Popa* was careful to limit its description of the holding in *Larrison* to "the context of recording telephone conversations." *Id*. Moreover, in *Larrison*, it was clear that the intercept point was New York, where the recording took place. Finally, because the court in *Larrison* never applied Pennsylvania law, it never considered 18 Pa.C.S. § 102 (relating to territorial applicability) (addressed below). Therefore, the rule in *Larrison* has no application to this case.

Mr. O'Donnell maintains that the Pennsylvania Wiretap Act claim must be dismissed because he was physically in Maryland when he entered the Teams meeting. ECF No. 81-1 at 7-8. However, if we have learned anything from *Popa*, it is that the question of where an "intercept" takes place under Pennsylvania law cannot be resolved by simply looking at where Mr. O'Donnell chose to observe the Teams meeting (in Maryland). See *Popa*, 52 F.4th at 130 (holding a wire communication can be considered "intercepted" in the "jurisdiction in which the to-be-tapped telephone is located" because "that is where the communications are rerouted, whether the listener is in the state or not."); *Arndt v. Government Employees Insurance Company*, 750 F.Supp.3d 518, 525 (D.Md. 2024) (citing *Popa*, 52 F.4th at 30) (holding electronic communications are intercepted from the location of the user's [Popa's] browser). Under either of these rules, that location was in Pennsylvania, because Pennsylvania is where the elders and their computers were located.

Fortunately, in applying the principles set forth in *Popa*, the Court need not concern itself with that portion of the Third Circuit's opinion that remanded the case back to the district court to determine where Popa's browser accessed the Harriet Carter website. *Popa*, 52 F.4th at 131-132. As pointed out by Mr. O'Donnell in his brief, *Popa* involved a more complex fact pattern involving the interception of Popa's browsing history on the Harriet Carter website using electronic cookies.

3

ECF No. 81-1 at 8-9 n.2. Since Popa's browsing on the Harriet Carter website was the "electronic communications" that Popa claimed was intercepted, the location of that point where Popa's browser accessed the Harriet Carter website became important. In this case, by contrast, there is no need for this Court to "get into the weeds of internet routing protocol" as stated by Mr. O'Donnell. *Id*. However, this is not because *Larrison* is applicable. Rather, this is because we know the location of the wire and/or electronic communications at issue (consisting of "human voice[s]", "images", and "sounds") were between people and computers located in Pennsylvania. Therefore, this "re-routing" process must have begun in Pennsylvania, since that is where the voices/images/sounds originated and entered the browsers of all the intended participants. Under these facts, the plaintiffs need not provide this Court with the precise path of servers that these communications traveled the internet, which would be incredibly difficult and dilute the privacy protections of Pennsylvania residents under the Pennsylvania Wiretap Act.[1]  See *Popa*, 52 F.4th 121, 132 n.10 ("We note that the Defendant's interpretation of the statute (that communications are only intercepted when received at the server) would lead to absurd results.").

Even if this Court concludes that Mr. O'Donnell's personal conduct occurred wholly outside of the Commonwealth, that does not end the inquiry. In determining the territorial reach of the Pennsylvania Wiretap Act, a criminal statute that includes a civil remedy, this Court must contend with a Pennsylvania jurisdictional statute that was not at issue in either *Larrison* or *Popa*:

**§ 102.  Territorial applicability.**

---

[1] See *Popa*, 52 F.4th 121, 132 n.10 ("We note that the Defendant's interpretation of the statute (that communications are only intercepted when received at the server) would lead to absurd results. Under this theory, companies could capture the data of people in other states as long as they parked their servers in a state with weak privacy protections. That would significantly undermine the privacy protection that is at the core of the [Pennsylvania Wiretap Act] and would be inconsistent with the General Assembly's intent.") (citation omitted).

4

> **(a) General rule.**--Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:
>
> (1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth;
>
> (2) conduct occurring outside this Commonwealth is sufficient under the law of this Commonwealth to constitute an attempt to commit an offense within this Commonwealth;
>
> (3) conduct occurring outside this Commonwealth is sufficient under the law of this Commonwealth to constitute a conspiracy to commit an offense within this Commonwealth and an overt act in furtherance of such conspiracy occurs within this Commonwealth;
>
> (4) conduct occurring within this Commonwealth establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this Commonwealth;
>
> (5) the offense consists of the omission to perform a legal duty imposed by the law of this Commonwealth with respect to domicile, residence or a relationship to a person, thing or transaction in this Commonwealth; or
>
> (6) the offense is based on a statute of this Commonwealth which expressly prohibits conduct outside this Commonwealth when the conduct bears a reasonable relation to a legitimate interest of this Commonwealth and the actor knows or should know that his conduct is likely to affect that interest.
>
> **(b) Exception.**--Paragraph (a)(1) of this section does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside this Commonwealth which would not constitute an offense if the result had occurred there, unless the actor intentionally or knowingly caused the result within this Commonwealth.

18 Pa.C.S. § 102(a)(b). In this case, subsection (a)(1) would be implicated, even in the absence of Mr. O'Donnell's personal conduct to intercept the Teams meeting in Pennsylvania, because he disclosed/used the information he acquired in Pennsylvania (satisfying the "conduct" and "result" elements). Moreover, under Pennsylvania law, a person is "guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S. § 306(a). Here, Mr. O'Donnell maintains that he was invited to the Microsoft Teams meeting by an elder of one of the plaintiff congregations in Pennsylvania and worked with that elder to gain access to the meeting, knowing that they did not have the permission of the other participants or their body of elders. See ECF No. 82, Joint Exhibit D (Deposition of Mark

5

O'Donnell) at 151-153; D-1. This cooperative criminal endeavor, which extended into Pennsylvania, renders Mr. O'Donnell and the unknown elder to be accomplices or co-conspirators, making Mr. O'Donnell responsible for any overt acts/conduct that occurred in Pennsylvania. See 18 Pa.C.S. § 306(b)(3), (c)(1)(ii); *Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa.Super. 2021) ("It is hornbook law that a member of a conspiracy is criminally culpable for all actions taken in furtherance of the conspiracy."). There is nothing in the Pennsylvania Wiretap Act that would limit the expansive reach of 18 Pa.C.S. § 102 in this case. Compare 18 Pa.C.S. §§ 5703, 5725 with *Commonwealth v. Peck*, 242 A.3d 1274 (Pa. 2020) (holding drug delivery in Maryland could not be predicate for drug delivery resulting in death charge, even if the death occurred in Pennsylvania, because the drug delivery statute required proof of acts occurring "within the Commonwealth.").

Finally, it is worth noting that Pennsylvania courts have the authority – under both Title III and the Pennsylvania Wiretap Act – to authorize the interception of communications taking place solely outside of Pennsylvania under the "listening post" theory. *United States v. Jackson*, 849 F.3d 540 (3d. Cir. 2017). Thus, the reach of the Pennsylvania Wiretap Act to conduct occurring beyond its borders is not unprecedented or surprising.

Therefore, in addition to Mr. O'Donnell's clear liability under the Maryland Wiretap Act, he is also liable under the Pennsylvania Wiretap Act. See *Jackson*, 849 F.3d at 551 (citing *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) ("The most reasonable interpretation of the statutory definition of interception is that an interception occurs where the tapped phone is located and where law enforcement officers first overhear the call)) (emphasis in original).

**C.     There Is No Basis In The Federal And State Statutory Text To Treat Continuing Disclosures Differently Than Continuing Interceptions.**

Mr. O'Donnell's argument – that an "interception" can be continuing (and therefore subject to the $100 per day liquidated damages clauses) but a "disclosure" is a singular event (regardless

6

of how many days the content of the intercepted communication is exposed online) – is contrary to the plain language of the federal, Pennsylvania, and Maryland wiretap acts, and would require this Court to insert language into these statutes that is simply not there. As a result, Mr. O'Donnell's motion for partial summary judgment as to damages should be denied.

Under Title III (federal wiretap act), a court may assess *inter alia* "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2)(B). Under Maryland and Pennsylvania law, a successful wiretap plaintiff is entitled to *inter alia* "liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher." 18 Pa.C.S. § 5725(a)(1); Md. Code, Cts. & Jud. Pro. § 410(a)(1). As noted by Mr. O'Donnell in his brief, there are three actionable "violations" of these wiretap acts at issue – interception, disclosure, and use. 18 U.S.C. § 2520(a); 18 Pa.C.S. § 5725(a); Md. Code, Cts. & Jud. Pro. § 410(a). The "$100 per day for each day of violation" applies to each type of violation the same way, and there is no language in these statutes suggesting that one type of violation (e.g. "interception") should be treated differently than another (e.g. "disclosure").[2]

Mr. O'Donnell recognizes, as he must, that a single act by a defendant to set up a recording device can give rise to an award of liquidated damages of $100 per day for each day that the communications are intercepted. See ECF No. 81-1 at 13 (citing *Standiford v. Standiford*, 598 A.2d 495, 502-503 (Md. App. 1991) (holding husband's action of secretly placing recording

---

[2] *Ellis v. Westinghouse Electric Co.*, LLC, 11 F.4th 221, 234 (3d. Cir. 2021) (citing *Hanover Bank v. C.I.R.*, 369 U.S. 672, 687 (1962) (holding that courts cannot "add to or alter the words employed to effect a purpose which does not appear on the face of the statute."); *Commonwealth v. Coleman*, 285 A.3d 599, 605 (Pa. 2022) (holding "we should not insert words into [a statute] that are plainly not there.") (internal citation omitted); *Maryland State Board of Elections v. Ambridge*, 330 A.3d 700, 719 (Md. 2025) ("Our review of [statutory] text is wholistic, seeking to give effect to all of what the General Assembly included and not add anything that the General Assembly omitted.") (internal citation omitted).

devices throughout his home to record his wife entitled wife to liquidated damages of $100 per day (125 days) that the devices were in operation). See also *Chagnon v. Bell*, 468 F.Supp. 927, 930 (D.D.C. 1979) (holding that plaintiff subject to a warrantless wiretap of his telephone for 268 days satisfied the amount in controversy requirement because plaintiff would be entitled to recover $100 per day for each day the wiretap was active). The same holds true for a continuing *disclosure*. For example, in *Pyankovska v. Abid*, 65 F.4th 1067 (9th Cir. 2023), the Ninth Circuit recently reversed a district court for awarding the statutory minimum of $10,000 in liquidated damages without considering a continuing *disclosure* of those intercepted communications:

> Here, Pyankovska contends that Abid violated the Wiretap Act over at least 707 days by (1) intercepting Pyankovska's conversations with the child using a recording device, (2) disclosing contents of the recordings in a declaration submitted to the state court, and (3) disclosing and intentionally using the transcripts by posting them and leaving them available on various public Facebook groups for approximately two years. And if Pyankovska is correct, 707 days of violations would mean a statutory damage award of $70,700, not $10,000. *See* 18 U.S.C. § 2520(c)(2). The district court erred in its analysis of the statutory damages award, and we remand so that the district court may revisit its calculations.

*Id*. at 1079-1080. In so doing, the Ninth Circuit explained that "the statutory-damages provision clarifies that violations are remedied on a per-day basis, not a per-occurrence basis . . . [a]nd were a single violation to extend over multiple days, the number of assessments would be based on the number of days the violation continued." *Id*. at 1079 (citation omitted).

Mr. O'Donnell proffers a dictionary definition of "disclosure" as "[t]he act *or process* of making known something that was previously unknown; a revelation of facts." See ECF No. 81-1 at 11 (citing Black's Law Dictionary (12th ed. 2024)) (emphasis supplied). This definition, if accepted by the Court, would make the term "disclosure" particularly amenable to a continuing violation theory ("process") – even more so than the statutory definition of "intercept" (phrased in a more singular manner) – because the "process" of disseminating information to a mass audience

online is a daily one. See 18 U.S.C. § 2510(4) (defining "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device"); 18 Pa.C.S. § 5702; Md. Code, Cts. & Jud. Pro. § 10-401. This establishes that the applicability of the continuing violation theory is predicated more on the "$100 a day for each day of violation" language than the definitions of "intercept" or "disclosure."[3]

Moreover, this Court can quickly dispose of Mr. O'Donnell's argument that the "$100 a day for each day of violation" language is inapplicable to his continuing disclosure/use because the YouTube video was "posted to an account over which Mr. O'Donnel had no control." See ECF No. 81-1 at 11. First, Mr. O'Donnell cites no legal authority for his proposition that he "is not responsible under the wiretap statutes for someone else resharing information that he allegedly disclosed." *Id*. To the contrary, Mr. O'Donnell's civil liability extends to the actions of those that he "procures" to disclose or use the intercepted communications. 18 Pa.C.S. 5725(a); Md. Code, Cts. & Jud. Pro. § 10-410(a); *Lonegan v. Hasty*, 436 F.Supp.2d 419, 427-428 (E.D.N.Y. 2006) (holding that 18 U.S.C. § 2520 permits suits based upon a procurement theory). Second, Mr. O'Donnell was a participant in the *joint* disclosure and maintenance of the YouTube video online, which he personally endorsed on Reddit. ECF No. 82 (Plaintiffs' Statement of Undisputed Facts) at ¶ 56. Third, *and perhaps most critically*, Mr. O'Donnell demonstrated his dominion and constructive control over the presence of the YouTube video online by having it taken down the day he was served with this lawsuit. See ECF No. 82, Joint Exhibit D, Deposition of Mark

---

[3] The federal cases cited by Mr. O'Donnell in his brief discuss "disclosure" in entirely different situations than the situation presented to this Court. ECF No. 81-1 at 11. The Third Circuit's decision in *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1349-1350) was a criminal case involving the sharing of intercepted communications acquired during a criminal investigation among federal agents. The civil remedy for an unlawful interception was mentioned in passing, but not at all at issue. As for the remaining cases, they have nothing to do with the federal wiretap act at all and are distinguishable from the case at bar.

O'Donnell at 194 ("I asked them to take it down immediately which they did."). See also ECF No. 82, Joint Exhibit D-1 at DEFENDANT000036 (podcaster email to Mr. O'Donnell allowing him to contribute links to the YouTube video description). Fourth, even if Mr. O'Donnell was not responsible for the presence of the YouTube video online, he was directly responsible for his Reddit post (under his alias "John Redwood") during the same period containing information from the Teams meeting. See ECF Doc. 82 (Plaintiffs' Statement of Undisputed Facts) at ¶ 56.

Finally, this Court need not concern itself with Mr. O'Donnell's hypothetical "infinite liability" scenario. As explained above, this is certainly not a case where a person accused of disclosing an intercepted communication to a journalist is rendered helpless over the journalist's continued use and disclosure of the information online. That "infinite liability" situation may one day confront this Court, which may choose to impose a "meaningful limit" on the continuing disclosure in any number of ways, including the date on which the person requests that the information be taken down (even if refused). However, that day is not today, and the fear that this scenario may one day confront this Court should not serve as an excuse to not apply the clear language of the per-day statutory schemes set forth above to the unique facts of this particular case.

Wherefore, the plaintiffs respectfully request that the Court deny the Defendant Mark O'Donnell's motion for summary judgment.

Respectfully submitted,

**COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC**

*[s] Christopher Carusone*

Date: July 14, 2025

CHRISTOPHER CARUSONE, ESQUIRE
PA Identification No. 71160
EDWARD SEGLIAS, ESQUIRE
PA Identification No. 55103
ASHLING A. EHRHARDT, ESQUIRE
PA Identification No. 93787
1600 Market Street, 32nd Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 564-1700
Email: eseglias@cohenseglias.com
　　　　ccarusone@cohenseglias.com
　　　　aehrhardt@cohenseglias.com
*Attorneys for Plaintiffs Burholme Congregation of Jehovah's Witnesses, et al.*

## **CERTIFICATE OF SERVICE**

I, Christopher D. Carusone, Esq., certify that on this date, I caused a true and correct copy of the foregoing Brief in Opposition to Defendant's Motion for Partial Summary Judgment to be served via e-mail to counsel for Defendant.


Dated:  July 14, 2025                            */s/ Christopher D. Carusone*
                                                                Christopher D. Carusone, Esq.